584 A.2d 119

**Iwan ZAAL**

v.

**STATE of Maryland.**

**No. 362, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 18, 1991.

Michael J. Moran, Assigned Public Defender, Towson, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on brief), for appellee.

Submitted before BISHOP, ALPERT and BLOOM, JJ.

ALPERT, Judge.

We are called upon for the first time to decide whether a criminal defendant charged with child sexual abuse is entitled, pursuant to COMAR 13A.08.02.20,[1] to inspect the child's school records. Iwan Zaal, appellant, appeals to us from a conviction of one count of child abuse that followed a jury trial in the Circuit Court for Montgomery County (the Hon. Peter Messitte, presiding).

## FACTS

The victim was born on July 27, 1977; she was twelve years old when this incident occurred. At trial, the victim testified that she was home alone when appellant, her grandfather, arrived on March 30, 1989, to take her for an outing. Appellant and the victim previously planned to go to the zoo together. When appellant arrived, he told her that he could not take her to the zoo because he had to work. He proposed instead that they go to the movies and out to lunch. The victim telephoned her mother at work to ask permission to go to the movies. Her mother gave her permission to do so.

Appellant and the victim returned to her home at about 3:30 p.m. that day. The victim changed from a skirt into a pair of oversized shorts. She went into the living room and sat on the couch next to appellant. At that point, appellant started talking about prior sexual encounters that he had had. Appellant then put his hand on the uppermost part of the victim's thigh. The victim, in an attempt to change the

---

1. COMAR 13A.08.02.20A(9) provides in pertinent part that:

   [a] local school system or educational system may disclose personally identifiable information from the education records of a student without the written consent of the parent or guardians of the student or the eligible student, if the disclosure is:

   . . . .

   To comply with a judicial order or lawfully issued subpoena, provided that the local school system or educational institution makes a reasonable effort ... to notify the parent or guardians or the eligible student of the order or subpoena in advance of compliance with the order or subpoena and record the attempt in a log.

subject, asked appellant to come into her room so that she could show him what she had bought with the $20.00 which he had given her because of her good report card. Appellant laid down on the victim's bed and pulled her on top of him. When she felt something go into her vagina, she jumped up, went back into the living room, and sat on the couch. Appellant sat down beside her and touched the victim's vagina with his index finger for about two minutes. He also took the victim's hand and placed it on his penis. The victim jumped up, told appellant that he had to leave, and opened the door for him to do so. Once appellant had gone, the victim telephoned her mother at work, waiting until her mother came home to tell her everything. Her mother then called the police.

The detective who investigated the incident testified at trial. Appellant stated that he was born on April 19, 1929. Appellant told the detective that the victim took his hand, placed it between her legs, and said, "I did it for my daddy." Later, she touched him and said "Now my father can get you."

Appellant's brother, Phillip, testified at trial on appellant's behalf. Phillip described the nature of the relationship that existed between appellant and appellant's son, the victim's father. Phillip stated that the victim's father visited Phillip at his place of employment and told Phillip that he was "going to get [appellant] one way or another."

## PROCEEDINGS

Before trial, appellant subpoenaed the victim's school records from the Montgomery County Board of Education (the Board). Relying on COMAR 13A.08.02.20B, the Board responded by filing a motion for a protective order. At the hearing on the motion, appellant argued that the school records were integral to an effective cross-examination of the victim, *i.e.*, to demonstrating the victim's credibility as a witness by exploring motivation, bias, and veracity. Appellant proffered that the victim attended a "special class-

room" because of an "emotional disturbance," and suggested that this was an area to be explored because there could be "a physical basis that would relate to her capacity to observe and relate," or "a mental deficiency leading to an inability to control actions." Further, appellant indicated that "extreme antagonism had existed for a number of years between himself and the victim's father." Thus, if the victim were aware of that hostility, it could have biased her or even have caused her to fabricate the incident. After an *in camera* review of the school records, the Circuit Court for Montgomery County denied appellant access to the records because the court found nothing in the record that would be admissible for impeachment purposes. As a result, the court concluded that the victim's privacy interests weighed against disclosure of the records.

At the end of the trial, a jury convicted appellant of one count of child abuse. The court declared a mistrial on the other counts of third degree sexual offense because the jury was unable to reach a unanimous verdict. On February 23, 1990, the court sentenced appellant to eighteen months in prison, all but one year suspended, with a two-year probation period that was to begin upon appellant's release. Appellant filed a notice of appeal on March 5, 1990 and asks the following questions:

I. Was the evidence legally sufficient to permit any rational trier of fact to find that appellant had the permanent or temporary care, custody, or responsibility for supervision of the victim?

II. Did the trial court commit reversible error when it granted the Board of Education's motion for a protective order, thus denying appellant access to the victim's school records?

## I.

Appellant contends that there was insufficient evidence to support his conviction of child abuse.

When an appellate court reviews the sufficiency of the evidence to support a criminal conviction, the standard that it must apply is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980). The standard does not require a court to " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' " *Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89 (emphasis in original) (citation omitted); *Tichnell,* 287 Md. at 717, 415 A.2d 830. Rather, the appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original); *Tichnell,* 287 Md. at 717, 415 A.2d 830. The standard is the same whether the evidence is direct or circumstantial. *Wilson v. State,* 319 Md. 530, 535–37, 573 A.2d 831 (1990).

Article 27, section 35A(b) states that "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary not exceeding 15 years." Md.Ann.Code art. 27, § 35A(b) (1987 & Supp. 1990). Appellant argues that there was insufficient evidence to support the requirement that he have "permanent or temporary care or custody or responsibility for supervision" of his granddaughter.

■ The phrase "permanent or temporary care or custody" encompasses all persons who stand *in loco parentis* to a child, *i.e.,* one who intentionally assumes the parental status and discharges parental duties, not just those who have custody by judicial decree. *Pope v. State,* 284 Md. 309, 321–23, 396 A.2d 1054 (1979). The Court of Appeals has noted, however, that the phrase is not synonymous with "responsibility for the supervision of," because the legisla-

ture added the latter provision three years after it had enacted the former into law. *Id.* at 322, 396 A.2d 1054. "A person may have the responsibility for the supervision of a minor child in the contemplation of § 35A although not standing in loco parentis to that child." *Id.* at 323, 396 A.2d 1054. It is

self-evident that responsibility for supervision of a minor child may be obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility.

*Id.* "[T]he existence of the requisite responsibility is a question of fact for the jury." *Newman v. State,* 65 Md.App. 85, 99, 499 A.2d 492 (1985).

■ We hold that the evidence in this case, when viewed in the light most favorable to the State, was sufficient for the jury to conclude beyond a reasonable doubt that appellant had assumed responsibility for the supervision of the victim. The victim, a twelve-year-old girl, was at home alone while her mother was at work. The victim called her mother for permission to go to the movies and out to lunch when the previously arranged—and presumably, previously approved—plan for appellant and the victim to visit the zoo did not work out. The victim's mother subsequently granted the victim permission to accompany appellant. A jury might reasonably infer that the victim's mother *impliedly* agreed to give responsibility for the victim to appellant when she gave the victim permission to accompany him and that appellant accepted that responsibility when he took the victim from her home. We hold that the record evidence is sufficient to reasonably support a finding of guilt beyond a reasonable doubt.

## II.

Appellant contends that the trial court erred when it granted the Board's motion for a protective order. Appellant argues that by denying the motion, the court violated

his rights under the federal and state constitutions. Specifically, appellant claims that the trial court denied him his right to confront his accusers, his right to compulsory process, his right to effective assistance of counsel, and his right to due process.

In *State v. Runge*, 317 Md. 613, 614, 566 A.2d 88 (1989), the Court of Appeals recently addressed whether a criminal defendant charged with child abuse was entitled to the disclosure of the county department of social services' records pertaining to the victim. Because the defendant in that case based his claim of entitlement *solely* on the statute which regulates the disclosures of such records, the Court of Appeals did not apply disclosure principles established in other cases. *See, e.g., Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Thus, we find *Runge* inapposite to the instant case and rely on the Supreme Court's analysis in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), to support our decision.

### A.

In *Ritchie*, the Supreme Court addressed the question "whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence." *Id.* at 42–43, 107 S.Ct. at 993–94.

The State had charged Ritchie with various sexual offenses against his 13–year–old daughter. *Id.* at 43, 107 S.Ct. at 994. During pretrial discovery, Ritchie subpoenaed records that pertained to his daughter from Children and Youth Services (CYS), a state agency responsible for the investigation of suspected child abuse. *Id.* Ritchie hoped to find in those records a medical report, witness names, and other unspecified exculpatory evidence that he could use in his defense. *Id.* at 44, 107 S.Ct. at 994. CYS refused to release the records on the grounds that they were

privileged under Pennsylvania law. *Id.* at 43, 107 S.Ct. at 994. The state statute provided that all information related to a CYS investigation must be kept confidential, subject to certain exceptions. *Id.* at 43–44, 107 S.Ct. at 994. One such exception was that CYS could release its records to " 'a court of competent jurisdiction pursuant to a court order.' " *Id.* at 44, 107 S.Ct. at 994.

The trial court held a hearing on Ritchie's motion for sanctions, which he filed when CYS failed to release the records. *Id.* Without examining the records, the court accepted the agency's assertion that there was no medical report in the records. *Id.* The trial court then denied Ritchie's motion and refused to order CYS to disclose the records. *Id.* At the end of trial, the jury convicted Ritchie on all counts and the court sentenced him to 3 to 10 years in prison. *Id.* at 45, 107 S.Ct. at 995.

Ritchie appealed to the Pennsylvania Superior Court, contending that the lower court's failure to disclose the CYS records violated his right to confrontation under the Sixth Amendment. *Id.* The Superior Court held that there had been a constitutional violation and thus vacated the conviction and remanded the case. *Id.* On the confrontation issue, the court held that Ritchie was not entitled to full disclosure. *Id.* The trial court was to review the records *in camera* and release only those verbatim statements that his daughter had made to the CYS counselor. *Id.* Then, the court was to make the entire record available to Ritchie's lawyer to allow him to argue the relevance of those statements. *Id.*

On further appeal, the Supreme Court of Pennsylvania affirmed the Superior Court's decision to vacate and remand the case to determine whether there should be a new trial. *Id.* at 46, 107 S.Ct. at 995. That court, however, concluded that Ritchie—through counsel—was entitled to review the entire record for useful evidence. *Id.* The court concluded that the trial court had violated Ritchie's rights under both the Confrontation Clause and the Compulsory

Process Clause[2] when it denied him access to the file because he lost "the opportunity to have the records reviewed by 'the eyes and the perspective of an advocate,' who may see relevance in places that a neutral judge would not." *Id.* The United States Supreme Court affirmed in part and reversed in part. *Id.*

### Confrontation Clause

The Court began by noting that the Confrontation Clause gives criminal defendants "the right to physically face those who testify against [them], and the right to conduct cross-examination." *Id.* at 51, 107 S.Ct. at 998. Ritchie alleged that the trial court violated his right of cross-examination when it denied him access to the records because he needed that information to formulate his defense. *Id.* That is,

"he did not know which types of questions would best expose the weaknesses in her testimony" without the information in the CYS records. *Id.* The Court explained that "the right to confrontation is a *trial* right", designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.[ ] The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.

*Id.* at 52–53, 107 S.Ct. at 998–99 (citations omitted) (emphasis in original). Thus, the Court concluded that the lower court did not violate the Confrontation Clause when it withheld the CYS records. *Id.* at 54, 107 S.Ct. at 999. Such a violation would have occurred *only* if the court had

---

**2.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." *See Pennsylvania v. Ritchie*, 480 U.S. 39, 45 n. 5, 107 S.Ct. 989, 995 n. 5, 94 L.Ed.2d 40 (1987). These clauses are applicable to the states through the Fourteenth Amendment. *Id.* (citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)) (Confrontation Clause), and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (Compulsory Process Clause).

prevented Ritchie's lawyer from cross-examining Ritchie's daughter. *Id.*

### Compulsory Process Clause

The Court then turned to the Sixth Amendment's guarantee of compulsory process. *Id.* at 55, 107 S.Ct. at 1000. The Court found that prior cases had established, "at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Id.* at 56, 107 S.Ct. at 1000. The Court explained that it had "never squarely held that the Compulsory Process Clause guarantees the right to discover the *identity* of witnesses, or to require the government to produce exculpatory evidence." *Id.* (emphasis in original). Rather, the Court indicated that it had traditionally evaluated claims such as Ritchie's under the Due Process Clause of the Fourteenth Amendment. *Id.* As a result, the Court concluded that a due process analysis was a more appropriate framework for review.

> Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory process provides no *greater* protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. It is enough to conclude that on these facts, Ritchie's claims more properly are considered by reference to due process.

*Id.* (emphasis in original).

### Due Process

Due process requires a state to "turn over evidence in its possession that is both favorable to the accused and materi-

al to guilt or punishment." *Id.* at 57, 107 S.Ct. at 1001. " 'Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *Id.*

Because the state statute allowed for disclosure in certain circumstances, the Court rejected the Commonwealth's argument that "no materiality inquiry was required because the statute render[ed] the contents of the file privileged," and that "[r]equiring disclosure ... would override the Commonwealth's compelling interest in confidentiality on the mere speculation that the file 'might' have been useful to the defense." *Id.* Because the legislature "contemplated *some* use of CYS records in judicial proceedings," the Court reasoned, "we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." *Id.* at 58, 107 S.Ct. at 1001-02. The Court affirmed the Pennsylvania Supreme Court's decision "to the extent it order[ed] a remand for further proceedings." *Id.* That is, the Court agreed that Ritchie was entitled to have the trial court review the CYS file to determine whether it held information that "probably would have changed the outcome of his trial." *Id.*

The Court next addressed the Pennsylvania Supreme Court's holding that a defendant is entitled—through counsel—to full access to *all* of the confidential information and to present arguments in favor of disclosure. The Court noted that it had never held—even absent a statute that restricted disclosure—that a defendant alone may determine the materiality of information. *Id.* at 59, 107 S.Ct. at 1002. The State decides which information it will disclose when a defendant makes only a general request for exculpatory information. "Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id.*

.

The Court concluded that Ritchie's interest in a fair trial would be fully protected by having the trial court do an *in camera* review of the CYS records. *Id.* at 60, 107 S.Ct. at 1002. The Court acknowledged that its ruling would deprive Ritchie of "the benefits of an 'advocate's eye.'" It noted, however, that the limitations on the trial court's discretion in such matters, would protect his interests in a fair trial, *e.g.*, the ongoing duty of the trial court to disclose information at whatever point that information might become material. To decide otherwise would compromise the State's "compelling interest" in protecting sensitive child abuse information. *Id.*

### B.

In this case, appellant subpoenaed the victim's school records for use in cross-examination. The Board sought a protective order in response. The court granted the protective order after it reviewed the records *in camera* and found that the records contained no material relevant to appellant's defense. Appellant now contends that this constitutes reversible error. We think that the fact pattern and the statute in this case are virtually identical to those in *Ritchie*.

Maryland carefully regulates the disclosure of personally identifiable information from a student's education records. *See* Md.Regs.Code tit. 13, § 13.08.02.19–.31 (1989). A school or educational institution generally may not disclose such information without the written consent of a student's parent or guardian. *Id.* at 13A.08.02.19. There are a few limited exceptions, however, including a disclosure "[t]o comply with a judicial order or lawfully issued subpoena" so long as the school or educational institution attempts to notify the student or the student's parent or guardian in advance of its compliance with the order. *Id.* at 13A.08.02.-20A(9).

### 1.

Appellant argues that the trial court violated his right to confrontation and his right to compulsory process under the

Sixth Amendment of the federal constitution and Article 21 of the Maryland Declaration of Rights when it granted the Board's protective order.

### (a)

■ *Ritchie* made clear that the right to confrontation under the Sixth Amendment of the federal constitution is a *trial* right whose purpose is to prevent the court from unnecessarily limiting the scope or the nature of defendant's cross-examination at trial. "[T]he Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 53, 107 S.Ct. at 999 (citation omitted). Thus, the sixth amendment right to confrontation is inapplicable under the facts of this case.

Appellant further argues that we should find a violation of the right to confrontation under Article 21 of the Maryland Declaration of Rights. We decline his invitation to do so. The confrontation right guaranteed by the Sixth Amendment and Article 21 express "'the same right,'" *Gregory v. State*, 40 Md.App. 297, 305, 391 A.2d 437 (1978); *Crawford v. State*, 282 Md. 210, 211, 383 A.2d 1097 (1978), and we see no reason to interpret Article 21 differently under the facts of this case.

### (b)

■ Appellant argues that the trial court also violated his right to compulsory process under the federal and state constitutions.[3]

In *Ritchie,* the Supreme Court chose to analyze the facts of that case under the Fourteenth Amendment's Due Process Clause which ensures the fundamental fairness of trials. *Id.* at 56, 107 S.Ct. at 1000. The Court did so

---

**3.** Article 21 of the Maryland Declaration of Rights provides "[t]hat in all criminal prosecutions, every man hath a right ... to have process for his witnesses...." *See supra* note 1 for the language of the Sixth Amendment's compulsory process clause.

because the applicability of the Compulsory Process Clause to "this type of case" was "unsettled" and because the Court traditionally had evaluated claims such as Ritchie's under "the broader protections of the Due Process Clause of the Fourteenth Amendment." *Id.*

Because the fact pattern and the statute at issue in this case are virtually identical to those in *Ritchie,* appellant's claim of a compulsory process violation under the federal constitution must fail. We agree with the Court's rationale for using a due process analysis and adopt that "framework for review" because of the similarities between the two cases. *Id.* at 56, 107 S.Ct. at 1001. We therefore do not address appellant's compulsory process guarantees under Article 24 of the Maryland Declaration of Rights. We do not believe that compulsory process would give appellant any greater protection than that afforded by due process and we do not address "whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment," *Ritchie,* 480 U.S. at 56, 107 S.Ct. at 1001, or from those of Article 24.

### 2.

Appellant contends that he was denied effective assistance of counsel [4] because the trial court denied him access to the victim's school records. He argues that counsel could not be "effective" because of "the potential lack of information pertinent either to guilt or innocence and the ability to use that information."

Because appellant cites no authority to support this argument, we decline to address it further. We do not think that denying appellant access to the victim's records rendered counsel ineffective in this case.

---

**4.** The Sixth Amendment provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' " *United States v. Under Seal,* 774 F.2d 624, 627 (4th Cir.1985).

3.

Appellant asks us to "fashion relief pursuant to the due process clause of the Maryland Declaration of Rights." That is, appellant asks us to give a broader interpretation to the Due Process Clause of the State's constitution than the Supreme Court gave to the Fourteenth Amendment Due Process Clause and to hold that appellant—through counsel—has the right to inspect the victim's school records.

"[S]imilar provisions within the Maryland and United States Constitutions are independent and separate from each other." *Lodowski v. State,* 307 Md. 233, 245, 513 A.2d 299 (1986). Comparable provisions of the two constitutions, however, generally are considered to be in *pari materia, id.* (citations omitted); *see also Crawford v. State,* 285 Md. 431, 452 n. 3, 404 A.2d 244 (1979) ("The phrase 'due process of law' in the federal constitution has been equated with the phrase 'Law of the land' in the Maryland Constitutional declaration that 'no man ought to be ... deprived of his life, liberty or property, but ... by the Law of the land.'"). We see no reason to construe and apply Article 24 any differently than the Supreme Court did the Fourteenth Amendment's Due Process Clause.

Under the Supreme Court's due process analysis in *Ritchie,* appellant was entitled to have the trial court review *in camera* the victim's school records to determine whether they contained information that might be material to his defense, *i.e.,* to see if they contained information that, if disclosed, might change the outcome of the trial. At the hearing on the motion for the protective order, appellant had the opportunity to proffer the type of information that he sought from the records. Appellant explained that because the victim had an emotional disability requiring special education, he needed to know the nature and extent of that disability to establish the victim's competency to testify, and also her credibility, motivation, and bias. Because of the long history of hostility between appellant and his son, the victim's father, appellant wanted to examine the records to determine whether the victim identified complete-

ly with her father or if there was a history of acting out or lying in school. The court conducted an *in camera* review of the records immediately following appellant's proffer. The court concluded that there was nothing in the records that would be relevant for impeachment purposes. Despite this, appellant still complains that the *in camera* review by the trial court alone effectively deprives the court of the "benefit of an 'advocate's eyes.'" He argues that *in camera* review in counsel's presence furthers the objective of the adversary system by counsel's assistance in identification and refinement of the issues.[5]

In *Ritchie*, the Court noted that "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance," and held that an *in camera* review of the CYS files by the trial court was sufficient to protect Ritchie's interest in a fair trial. *Id.* at 59–60, 107

---

5. Appellant also argues that because defense counsel laid a foundation for some finding of relevancy, the court should have ordered disclosure on that basis pursuant to *Eiler v. State*, 63 Md.App. 439, 492 A.2d 1320 (1985). In *Eiler*, defense counsel had proffered that the State's key witness probably suffered from a mental disorder and that said disorder could affect her ability to perceive and relate accurately the events about which she testified. *Id.* at 450, 492 A.2d 1320. Defense counsel offered the testimony of a psychiatrist as to the witness's psychological diagnosis and the dosage and type of medication prescribed for her. *Id.* at 444, 492 A.2d 1320. The trial court refused to allow the psychiatrist to testify. *Id.* at 449, 492 A.2d 1320. On review of the record, we concluded "that inquiry was likely to disclose defects in relevant factors of credibility." Id. at 450, 492 A.2d 1320. Consequently, we held that the psychiatrist/patient privilege—even though applicable—could not "prohibit the liberal, but careful, allowance of exploratory questions [on cross-examination] into [the witness's] mental condition for the purpose of testing her credibility." *Id.* at 451, 492 A.2d 1320.

*Eiler* is inapposite. The trial court permitted appellant to cross-examine the victim about the hostile relationship that existed between appellant and his son, the victim's father, and also about those matters in her educational background that were relevant to her credibility. Thus, there was no restriction on appellant's cross-examination of the victim in this case as there was in *Eiler*. The only restriction in this case pertained to appellant's access to the victim's school records. As such, it is irrelevant whether appellant's proffer was adequate; materiality is the sole criterion for disclosure.

S.Ct. at 1002. Although the Court recognized that its decision deprived Ritchie of "the benefits of an 'advocate's eye,' " the Court believed that allowing full disclosure of the files would "sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information." *Id.*

■ In this case, the victim had an emotional disability or other problem that required special education. The school records contained not only evaluations of her performance and potential, but also psychological evaluations of the victim. Having determined that nothing in the records was relevant to appellant's purposes, the court concluded that the State's strong interest in protecting the privacy of its students generally, and this student particularly, outweighed appellant's need for disclosure of the records. Having carefully reviewed the subject records, we agree with the trial court's conclusion and hold that the trial court did not abuse its discretion when it granted the Board's motion for a protective order. *See United States v. Phillips,* 854 F.2d 273, 278 (7th Cir.1988) (no abuse of discretion when trial court, after *in camera* review, denied defendant's motion for production of entire contents of FBI's informant file); *see also Couser v. State,* 282 Md. 125, 140, 383 A.2d 389 (1978) (request for production of documents in the State's control ordinarily within the trial court's discretion); *Williams v. Moran,* 248 Md. 279, 291, 236 A.2d 274 (1967) (administration of discovery rules lies within the trial court's discretion, which will not be disturbed absent a showing of abuse); *Craig v. State,* 76 Md.App. 250, 271, 544 A.2d 784 (1988) (trial court did not err when it refused to disclose to defendant accused of child sexual abuse therapist's notes containing statements of child witnesses and other related information), *rev'd on other grounds,* 316 Md. 551, 560 A.2d 1120 (1989), *vacated and remanded,* —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.