602 A.2d 1247

**Iwan ZAAL**

v.

**STATE of Maryland.**

**No. 28, Sept. Term, 1991.**

Court of Appeals of Maryland.

March 16, 1992.

---

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

In this case, we are asked to decide whether, pursuant to a lawfully issued subpoena, *see* COMAR 13A.08.02.20A,[1] a defendant charged with child sexual abuse, may inspect the school records of the child he has allegedly abused. The Court of Special Appeals responded in the negative, when it addressed the issue. *Zaal v. State*, 85 Md.App. 430, 584 A.2d 119 (1991). We granted the petition for writ of certiorari, filed by petitioner, Iwan Zaal, to review the important issue. We shall reverse.

## I.

Petitioner was charged with sexual child abuse of his twelve year old granddaughter, the victim. According to the victim, when she and petitioner returned from the movies and lunch, petitioner talked dirty to her and fondled her, which included touching her inappropriately on the uppermost part of her thigh and fingering her vagina. In addition, she stated that, at one point, petitioner placed her on top of him and she felt something go into her vagina. Finally, she maintained that petitioner placed her hand on his penis. Petitioner denied the allegations and, in fact, rejoined that it was the victim who acted inappropriately. He maintains that it was the victim who placed his hand between her legs, afterwards stating, "I did it for my daddy," and later touched him, while commenting, "Now

---

1. COMAR 13A.08.02.20. provides, in pertinent part:

 A. A local school system or educational institution may disclose personally identifiable information from the education records of a student without the written consent of the parent or guardians of the student or the eligible student, if the disclosure is:

 \* \* \* \* \* \*

 (9) To comply with a judicial order or lawfully issued subpoena, provided that the local school system or educational institution makes a reasonable effort ... to notify the parent or guardians of the student or the eligible student of the order or subpoena in

my father can get you." Evidence presented at trial indi-
cated that there was "bad blood" between petitioner and the
victim's father to the point that the victim's father had
threatened that he would "get [petitioner] one way or
another."

Prior to trial, petitioner subpoenaed the victim's school
records from the Montgomery County Board of Education
("the Board").[2] *See* Maryland Rule 4-266. In response,
relying on COMAR 13A.08.02.20B,[3] the Board moved for a
protective order. *See* Maryland Rule 4-266(c). A hearing
was held on the motion. Petitioner argued that the school
records he sought were critical to his effective cross-exami-
nation of the victim. Because, he noted, he was aware that
the victim had an emotional disability requiring special
education and he denied her allegations, the case would
likely turn on the victim's credibility. Therefore, he contin-
ued, it was necessary that he be able to attack her credibili-
ty and, specifically, to explore her motivation, bias and
veracity. This would not be possible, he proffered, "with-
out access to some records indicating the nature and extent
of the child's disability." Moreover, he suggested that the
records might reveal "a pattern of behavior pre-existing
that would impinge upon [the victim's] believability in the
statement." In fact, that the victim was in a "special
classroom" as a result of an "emotional disturbance" bears,
he asserts, on whether there was "a physical basis that

---

advance of compliance with the order or subpoena and record[s]
the attempt in a log.

\* \* \* \* \* \*

**2.** The petitioner makes no contention, with good reason, that the
records are discoverable pursuant to Maryland Rule 4-263. That rule
places the obligation on the State to disclose, but it presupposes that
the information is in the prosecution's possession or under its control.

**3.** COMAR 13A.08.02.20B provides:
 B. This regulation may not be construed to require or preclude
 disclosure of any personally identifiable information from the edu-
 cational records of a student by a local school system or educational
 institution to the parties set forth in § A, above.
For a possible interpretation of this subsection, see n. 5 *supra.*

would relate to her capacity to observe and relate" or "a mental deficiency leading to an inability to control actions." Furthermore, petitioner noted "the extreme antagonism [that] had existed for a number of years between himself and the victim's father," contending that the victim's awareness of that hostility may indicate a bias on her part which caused her to fabricate the incident.

After conducting an *in camera* review of the victim's school records, the trial court, granting the Board's motion for protective order, quashed the petitioner's subpoena. It noted that its review did not reveal "anything that would appear to set forth any kind of evidence that would be directly admissible in this proceeding," for impeachment purposes. The trial court concluded, "there is really nothing I can see that in any significant way would relate to truth telling to this or to any other occasion" and, certainly, nothing "show[ing] an inveterate tendency to lie." Therefore, the court said:

> When you weigh that against a rather strong privacy concern, and frankly the concern of making this record an open issue and permitting the child to be inquired as to it even in the face of objections that could be sustained when raised by the State, may compromise significantly this child's educational future.
>
> That's really one of the reasons for the privacy consideration.

On appeal,[4] petitioner argued that the trial court's ruling violated his rights to confrontation, compulsory process and effective assistance of counsel under both the federal and State constitutions. Rejecting those arguments, the intermediate appellate court, concluding that "the fact pattern

---

**4.** Petitioner was tried by a jury on charges of child abuse and sexual offense in the third degree (three counts). The jury returned a guilty verdict on the child abuse count, but was unable to agree on the others. Accordingly, a mistrial was declared as to the sexual offense counts and petitioner was sentenced to 18 months imprisonment, all but one year of which was suspended in favor of two years probation commencing upon his release from imprisonment.

and the statute in this case are virtually identical to those in *Ritchie*," found *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) dispositive. *Zaal*, 85 Md. App. at 444, 584 A.2d at 126. It observed:

> Maryland carefully regulates the disclosure of personally identifiable information from a student's education records. *See* Md.Regs.Code tit. 13, § 13[A].08.02.19–.31 (1989). A school or educational institution generally may not disclose such information without the written consent of a student's parent or guardian. *Id.* at 13A.08.02.19. There are a few limited exceptions, however, including a disclosure "[t]o comply with a judicial order or lawfully issued subpoena" so long as the school or educational institution attempts to notify the student or the student's parent or guardian in advance of its compliance with the order. *Id.* at 13A.08.02.20A(9).

85 Md.App. at 442, 584 A.2d at 125.

## II.

The statute at issue in *Pennsylvania v. Ritchie, supra,* was enacted to establish an agency to combat child abuse by investigating cases of suspected mistreatment and neglect. 480 U.S. at 43, 107 S.Ct. at 994, 94 L.Ed.2d at 48. In pertinent part, it provided:

> (a) Except as provided in section 14 [Pa.Stat.Ann., Tit. 11, § 2214 (Purdon Supp.1986)] reports made pursuant to this act including but not limited to report summaries of child abuse ... and written reports ... as well as any other information obtained, reports written or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to:
>
> \* \* \* \* \* \*
>
> (5) A court of competent jurisdiction pursuant to a court order.

Pennsylvania Statutes Ann., Title 11, § 2215(a) (Purdon Supp.1986).[5] There are other exceptions not here relevant. Thus, the Court was presented with the issue "whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment

---

5. Maryland has a similar statute, *see* Md.Code (1957, 1987 Repl.Vol.) Art. 88A § 6(b). That section, in pertinent part, provides:

 Except as otherwise provided in Title 5, subtitle 7 of the Family Law Article, the records and reports concerning child abuse or neglect are confidential, and their unauthorized disclosure is a criminal offense subject to the penalty set out in subsection (e) of this section. Information contained in reports or records concerning child abuse or neglect may be disclosed only:

 (1) under a court order;

 * * * * * *

 As in the case of the Pennsylvania statute, there are exceptions not here relevant. The statute was interpreted in *State v. Runge*, 317 Md. 613, 566 A.2d 88 (1989). Construing its words, 317 Md. at 616, 566 A.2d at 89, in light of its legislative history, for context, *id.*, 317 Md. at 618, 566 A.2d at 90, but without application of any *external disclosure aids*, we determined "that the goal of § 6 was, in a larger societal sense, to provide for confidentiality, and in a narrower sense, to conform to the mandates of federal law," *id.*, 317 Md. at 620, 566 A.2d at 91; it "was never intended to be a vehicle to permit the willy-nilly disclosure of the very records the legislature sought to keep confidential." *Id.*, quoting *Freed v. Worcester County*, 69 Md.App. 447, 454, 518 A.2d 159, 162 (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987), *appeal dismissed*, 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987). We concluded:

 When we look at § 6(b) from the perspective of its legislative history and when we review it as an integral part of a criminal statute designed to prevent the disclosure of records, its language becomes clear. When the statute tells us that "[i]nformation contained in reports or records concerning child abuse or neglect may be disclosed only" under defined circumstances or to designated entities, it is telling us that custodians have authority to release the information within the statutory framework and that if it is so released, the custodians will not be subject to prosecution under § 6(b). Thus, if a custodian discloses pursuant to court order, the custodian is immune. And if the custodian exercises discretion to disclose to the accused abuser responsible for the child, the custodian cannot be liable under the statute (providing any applicable regulations are adhered to and informants and others are safeguarded.) (footnote omitted)

 *Id.*

Right to discover favorable evidence." 480 U.S. at 42–43, 107 S.Ct. at 993–94, 94 L.Ed.2d at 48.

Having been charged with various sexual offenses against his minor daughter and seeking unspecified exculpatory evidence to be used in his defense, Ritchie subpoenaed the investigative records maintained by the Children and Youth Services Agency. Relying on its enabling statute, which provided that information relating to a child abuse investigation is confidential, subject to certain exceptions, the agency refused to release them. Without reviewing all of the records, but accepting the agency's representation that the records contained no relevant medical reports, the trial judge refused to order the records disclosed and denied Ritchie's motion for sanctions. Ritchie was subsequently tried and convicted of child abuse.

On appeal, the Pennsylvania Superior Court vacated the conviction and remanded the case for further proceedings. It held that, while not entitled to full disclosure of the records, Ritchie was initially entitled to an *in camera* review by the trial judge, release of certain statements made by the victim to her counselor, and, thereafter, disclosure of the entire record to his lawyer in order that the relevance of the statements disclosed might be argued. Although affirming the Superior Court's decision to vacate and remand, the Supreme Court of Pennsylvania, relying on the confrontation and compulsory process clauses, held that Ritchie was entitled to review the entire record for useful information. *Pennsylvania v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985). In that Court's view, the defendant was entitled to "the opportunity to have the files reviewed with the eyes and the perspective of an advocate," who "may see connection and relevancy" a neutral judge would not. 502 A.2d at 153.

Affirming in part and reversing in part, the Supreme Court of the United States analyzed the issue in the context

of the due process clause of the Fourteenth Amendment.[6] It affirmed the Pennsylvania Supreme Court's remand for further proceedings, agreeing that the trial court should have reviewed the agency's file, but for information that "probably would have changed the outcome of [the defendant's] trial." 480 U.S. at 58, 107 S.Ct. at 1002, 94 L.Ed.2d at 58. The Court rejected, however, the holding that the review must be done through counsel. Notwithstanding that defendant would be deprived of the "advocate's eye" in favor of a trial judge's *in camera* review, the Court believed that limitations on the trial court's discretion would protect the defendant's interest in a fair trial, 480 U.S. at 60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59, and, in any event, the State's "compelling interest" in protecting sensitive child abuse information outweighed the defendant's countervailing interest in having disclosure. *Id.* As to this point, the Court made the following significant comments:

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when an abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also

---

**6.** The Court rejected defendant's confrontation clause argument, reasoning that it is a trial right, not one applicable to discovery. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54 (1987). As to the compulsory process claim, the Court preferred the due process clause analysis. 480 U.S. at 56, 107 S.Ct. at 1001, 94 L.Ed.2d at 54.

will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and witnesses that they speak to the CYS counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result. (emphasis supplied)

480 U.S. at 60–61, 107 S.Ct. at 1003, 94 L.Ed.2d at 59–60.

A plurality of the court rejected the defendant's confrontation argument premised on the need for discovery in order to render cross-examination effective on the basis that "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." (emphasis in original) 480 U.S. at 52, 107 S.Ct. at 999, 94 L.Ed.2d at 54. In a concurring opinion, Justice Blackmun disputed that characterization of the confrontation right and, indeed, expressed the belief that accepting "the plurality's effort to divorce confrontation analysis from any examination into the effectiveness of cross-examination, ... in some situations [would render] the confrontation right ... an empty formality." 480 U.S. at 62, 107 S.Ct. at 1004, 94 L.Ed.2d at 60. He cited *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) as an example of the fruitlessness of being permitted to pursue a proper line of questioning without having been allowed to discover the availability of information necessary for effective cross-examination.

## III.

Chapter 02, Student Records, of subtitle 08, Title 13A of the Code of Maryland Regulations was promulgated on authority of Maryland Code (1974, 1989 Repl.Vol.) § 2-205(c) of the Education Article. That section requires the State Board of Education to "adopt by-laws, rules, and

regulations for the administration of the public schools." Regulation .20 is, in turn, based on 34 Code of Federal Regulations (7-1-90 Ed.), Title 34, § 99.31 (34 CFR § 99.-31),[7] one of the regulations implementing the Family Education Rights and Privacy Act of 1974, codified at 20 U.S.C. § 1232g (Supp. IV., 1974, 1991). Subsection (b)(2), in pertinent part, provides:

(2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection unless—

(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

(B) such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified

---

7. In pertinent part, 34 CFR § 99.31 provides:
 (a) An educational agency or institution may disclose personally identifiable information from an education record of a student without the consent required by § 99.30 if the disclosure meets one or more of the following conditions:
 \* \* \* \* \* \*
 (9)(i) The disclosure is to comply with a judicial order or lawfully issued subpoena.
 (ii) The educational agency or institution may disclose information under paragraph (a)(9)(i) of this section only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance.
 \* \* \* \* \* \*
 (b) This section does not forbid or require an educational agency or institution to disclose personally identifiable information from the education records of a student to any parties under paragraphs (a)(1) through (11) of this section.
 Section 99.30 addresses the situation where the parent or the eligible student consents to disclosure of the student's educational record.

of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.[8]

There is no comparable Maryland statute. Thus, to discern the purpose of the regulation, it is necessary to determine the purpose of the federal statute.

 The Family Education Rights and Privacy Act of 1974 has as its purpose

> to assure parents of students and students themselves if they are over the age of 18 or attending an institution of post-secondary education, access to their education records and to protect such individuals' rights to privacy by limiting the transferability [and disclosure] of their records without their consent. The Secretary of Health, Education, and Welfare is charged with enforcement of the provisions of the Act, and failure to comply with its provisions can lead to withdrawal of Office of Education Assistance to the educational agency or institution.

*Rios v. Read,* 73 F.R.D. 589, 597 (E.D.N.Y.1977), quoting 120 Congressional Record S21487 (daily ed. Dec. 12, 1974) (joint remarks of Senator Buckley and Senator Pell). The Act was the congressional response to "the growing evidence of the abuse of student records across the nation." [9]

---

**8.** Section 1232g(b)(1) concerns when, and to whom, an institution, without written consent of a student's parents, may release education records. The petitioner is not among the list of eligible persons.

**9.** Among the abuses which the Federal Educational Rights and Privacy Act was designed to prevent is "the insertion of potentially prejudicial anecdotal comments and factual inaccuracies into student's school records." *Bauer v. Kincaid,* 759 F.Supp. 575, 590 (W.D.Mo. 1991), quoting speech by Senator Buckley to Legislative Conference of the National Congress of Parents and Teachers, 120 Cong.Record, 36532 (Dec. 13, 1974). "When parents and students are not allowed to inspect such school records and make corrections, such material can have a devastatingly negative effect on the academic future and job prospects of an innocent, unaware student. A simple inaccuracy or a comment by a spiteful, neurotic teacher can potentially ruin a student's future." *Id.* Another target of the Act is the "frequent, even systematic violations of the privacy of students and parents by the schools through the unauthorized collection of sensitive personal information and the unauthorized, inappropriate release of personal

73 F.R.D. at 597–98, quoting 121 Cong.Record S7974 (daily ed. May 13, 1975) (remarks of Sen. Buckley). "The underlying purpose of FERPA was not to grant individual students a right to privacy or access to educational records but to stem the growing policy of many institutions to carelessly release educational information." *Bauer v. Kincaid,* 759 F.Supp. 575, 590 (W.D.Mo.1991), quoting *Smith v. Duquesne University,* 612 F.Supp. 72, 80 (W.D.Pa.1985). While "principally a right to privacy of educational records act,"

> FERPA was adopted to address systematic, not individual, violations of students' privacy and confidentiality rights through unauthorized releases of sensitive educational records. The underlying purpose of FERPA was not to grant individual students a right to privacy or access to educational records, but to stem the growing policy of many institutions to carelessly release student records.

*Smith v. Duquesne University,* 612 F.Supp. at 80. It did not, in other words, create a privilege against disclosure of student records to be invoked by the school, the student, or his or her parents:

> It is obvious ... that the 1974 Act does not provide a privilege against disclosure of student records. The statute says nothing about the existence of a school-student privilege analogous to a doctor-patient or attorney-client privilege. Rather, by threatening financial sanctions, it seeks to deter schools from adopting policies of releasing student records. Moreover, a school is not subject to sanctions because it discloses "personally identifiable information" if it does so in compliance with a judicial order.

*Rios v. Read,* 73 F.R.D. at 598. *See Reeg v. Fetzer,* 78 F.R.D. 34, 35 (W.D.Okl.1976).

---

data to various individuals and organizations." *Rios v. Read,* 73 F.R.D. 589, 598–99 (E.D.N.Y.1977), quoting 121 Cong.Reg. S7975 (daily ed. May 13, 1975).

 That the statute exempts a local school system or educational institution which discloses "personally identifiable information" in compliance with a judicial order from sanctions does not mean that a student's privacy or confidentiality interest in his or her education records is automatically overridden whenever a court order to review them is sought. The statute contemplates that "students have substantial privacy and confidentiality interests in their school records." Thus, "privacy violations are no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interest of the students." *Rios v. Read,* 73 F.R.D. at 599. Although the statute does not, by its express terms, exempt school records from discovery under the Federal Rules of Civil Procedure, whether, and under what circumstances, those records are discoverable must be determined by reference to the congressional policy in enacting the FERPA. Since that policy places a significantly heavy burden on the party seeking access to student records than on one seeking other records which are not impressed with that policy, *Rios v. Read,* 73 F.R.D. at 598, when the issue before the court is whether to allow disclosure of education records covered by the FERPA, a trial judge, in the exercise of discretion, must conduct a balancing test in which the privacy interest of the student is weighed against the genuine need of the party requesting the information for its disclosure. *Klein Independent School District v. Mattox,* 830 F.2d 576, 580 (5th Cir.1987); *Rios v. Read,* 73 F.R.D. at 599; *Krauss v. Nassau Community College,* 122 Misc.2d 218, 469 N.Y.S.2d 553, 555 (S.Ct. 1983). Disclosure is permitted when the need for it outweighs the privacy interest of the student or his or her parents.

## IV.

 As indicated, Maryland has no statute comparable to the Family Education Rights and Privacy Act of 1974.

Nevertheless, there are 31 regulations in COMAR 13A.08.-02, of which 17 "are based on federal regulations implementing the Family Education Rights and Privacy Act, 34 CFR, § 99 et seq." Regulation .01. And, for the most part, those regulations are almost identical to the regulations on which they are based. Therefore, it may be inferred that the purpose of the regulations in Chapter 02, pertaining to student records, is to bring the Maryland practice with respect to the disclosure of education records into line with the federal practice. We believe that the federal precedents on the FERPA apply with equal force to the applicable regulations in COMAR 13A.08.02.

Among the relevant regulations patterned after the federal regulations are .07, Definitions, and .10, Formulation of Local School System Policy and Procedures. Regulation .07K defines "personally identifiable" as including the following data or information:

(1) The name of a student;

(2) The student's parent, or guardians or other family member;

(3) The address of the student;

(4) A personal identifier, such as the student's social security number or student number;

(5) A list of personal characteristics which would make it possible to identify the student with reasonable certainty; or

(6) Other information which would make it possible to identify the student with reasonable certainty.

It is to be contrasted with Regulation .07A. Under it, "Directory information may include the following information relating to a student: the student's name, address, telephone number, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, the most recent previous local school system or educational institution attended by the student, and other similar information,

as defined by the local school system in its adoption of policy as required in these regulations under Regulation .10A(3)(c)."

Regulation .10 addresses the responsibility of a local school system to establish a policy and procedure for

(3) Not disclosing personally identifiable information from the education records of a student without the prior written consent of the parent or guardians of the student or the eligible student, except as otherwise permitted by this regulation, including at least:

(a) A statement of cases in which prior written consent for disclosure o[f] personally identifiable information is not required,

*　　*　　*　　*　　*　　*

(c) A specification of the personally identifiable information to be designated as directory information; ....

"Student records" are defined as "any information directly related to one or more students, identifiable to an individual student, and that are maintained by a local school system or educational institution or by a party acting for the local school system or educational institution," including "papers, correspondence, reports, forms, photographs, photostats, film, microfilm, electronic recordings, such as sound recording or computerized data, or other documents regardless of physical format characteristics, and all copies thereof, that are made or received and kept on file in a classroom, school office, system office, or other location by the local school systems or educational institutions of the State in the transaction of legitimate and recognized educational business." Regulation .07N. Excluded are, as relevant to the case *sub judice*, "[r]ecords relating to an eligible student which are created or maintained by a physician, psychiatrist, psychologist, or other recognized professional or para-professional acting in his or her professional or para-professional capacity, or assisting in that capacity; created, maintained, or used only in connection with the provision of treatment to the student; and not disclosed to anyone other than individuals providing the treatment. ..." Treatment

"does not include remedial educational activities or activities which are part of the program of instruction at the local school system or educational institution." *Id.*

There are other regulations which have no source in the FERPA regulations. One is .03, which provides:

A. The provisions of this regulation are intended to preserve the right of students and parents or guardians to:

(1) Have full access to all official records about the student which are maintained by any educational institution or local school system;

(2) Have removed from these records any information about the student which is determined to be inaccurate or misleading;

(3) Enjoy confidentiality and privacy in regard to the disclosure of information contained in those records to outside agencies; and

(4) Provide for efficient student records management.

B. General Provisions.

(1) Procedures for Administration. Records shall be kept for individual students in accordance with regulations of the State Board of Education and the "Maryland Student Records System, Manual of Instructions," and subsequent data systems.

(2) Confidentiality. Individual student records maintained by teachers or other school personnel under the provision of this title are to be confidential in nature, and access to these records may be granted only for the purpose of serving legitimate and recognized educational ends. Individual student records, with the exception of records that are designated as permanent, and with other exceptions provided by law, should be destroyed when they are no longer able to serve legitimate and recognized educational ends.

(3) Access of Records. All records of a student maintained under the provisions of this title, including confidential records, shall be available to that student's

parent or parents (non custodial—see Regulation .14C) or legal guardians in conference with appropriate school personnel. For purposes of this regulation, the term "records" may not include an education department employee's personal notes which are not made available to any other person.

This regulation makes manifest that "confidentiality and privacy" of the student's records are important considerations.

■ Like the provisions of the FERPA and the regulations promulgated pursuant thereto, the Maryland regulations do not provide, nor even indicate, that a student's education records are not discoverable pursuant to the Maryland Rules.

## V.

■ As in *Ritchie*, confidentiality is a goal of the Family Education Rights and Privacy Act of 1974, and the Maryland regulations promulgated partially in respect thereto. Nevertheless, in the case of a student's education records, the importance of the goal differs, in degree, from its importance in regard to a state's child abuse information.[10] There is not the same degree of urgency to limit access to the education records of students as is true in the case of maintaining child abuse information confidential.

Critical to the *Ritchie* analysis was the State's interest in maintaining the confidentiality of child abuse information and, in particular, the sources of that information. 480 U.S. at 60–61, 107 S.Ct. at 1003, 94 L.Ed.2d at 59–60. Thus, the Court recognized the need to protect those sources' confidences, thereby preventing the confidentiality interest protected by the statute from being undermined. In other words, the Supreme Court was concerned with protecting

---

10. And it certainly is not so strong as the privacy interest protected by the statute construed in *Runge*. The confidentiality element of § 6 is so strong that the Legislature made it a criminal offense to disclose the child abuse investigative records.

the integrity of the information gathering process and with encouraging persons to report child abuse, a very serious, and ever growing, criminal offense. *Id.* Moreover, as we have seen, the statute itself declared the records confidential.

The assumption adopted in *Ritchie*—that a trial court, at least temporarily, could assume the role of advocate and, upon a review of records, assess, sufficiently accurately to protect the interests of both the State and the accused, whether those records ought to be disclosed to the defense—must be considered in this context. The *Ritchie* court said as much. *See* 480 U.S. at 60–61, 107 S.Ct. at 1003, 94 L.Ed.2d at 59–60. Indeed, in other contexts, the Court has applied a different rule with respect to a defendant's access to potentially impeaching information. *See, e.g. Jencks v. United States*, 353 U.S. 657, 669, 77 S.Ct. 1007, 1014, 1 L.Ed.2d 1103, 1112 (1957) (disapproving the "practice of producing government documents to the trial judge for his determination of relevancy ... without hearing the accused...."); *Dennis v. United States*, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973, 986 (1966) (noting that a trial judge ordinarily is not the appropriate person to determine whether information would be useful to a defendant for the impeachment of a State's witness, that determination belonging more properly to the advocate).

Our cases reflect a similar tendency to allow a defendant access to information when privacy interests are not overriding. In *Carr v. State*, 284 Md. 455, 397 A.2d 606 (1979), this Court applied an analysis similar to that used in *Davis v. Alaska, supra*,[11] to resolve the issue "whether under the facts and circumstances of his criminal trial [a defendant]

---

11. There, the Supreme Court reversed a conviction because the trial court prohibited use, on cross-examination, of a juvenile record to attack a witness' credibility on the basis of bias. The effectiveness of cross-examination was denied, the Court opined, when the defendant was not allowed to use the juvenile record.
*Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355 (1974).

had a right to obtain and use the written statements of a State's witness for purposes of cross-examination or impeachment." *Id.,* 284 Md. at 456, 397 A.2d at 606. In that case, the trial court refused to allow defense counsel to question a State's witness concerning a written statement that witness had given the police or to require the State to produce it so that defense counsel could, as the court instructed he would have to, quote from the statement. 284 Md. at 458, 397 A.2d at 607. We reversed, observing:

> In this case Oliver was a very important witness. His testimony was crucial.... We have here no "fishing expedition" in advance of trial. We have testimony on matters involving identity which may be inconsistent with the prior signed statement by this witness. It was then that trial counsel made his request for this signed statement. Every skilled trial advocate knows the crucial importance in such situations of cross-examination. Effective cross-examination here made it necessary that defense counsel be permitted to directly confront the witness with his inconsistent prior statement. To deny to defense counsel the tool necessary for such adequate cross-examination under these circumstances amounts in our view to a denial to the defendant of due process of law.

284 Md. at 472–73, 397 A.2d at 614–15.

These comments were a synthesis of the results of a detailed review of cases which addressed the issue of effective cross-examination. *See Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), *Brady v. Maryland.,* 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963); *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972); *United States v. Agurs,* 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342, 349–50 (1976); *State v. Haas,* 188 Md. 63, 51 A.2d 647 (1947); *McKenzie v. State,* 236 Md. 597, 204 A.2d 678 (1964); *Veney v. State,* 251 Md. 159, 246 A.2d 608 (1968), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969); *Austin v. State,* 253 Md. 313, 252 A.2d 797

(1969); *Couser v. State,* 282 Md. 125, 383 A.2d 389 (1978); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The information sought in *Carr* was in the prosecution's possession, in the form of signed statements by the witness, while here, it is in the possession of the State Department of Education, in the form of a file, the specifics of which are known only to the Department and, by virtue of the *in camera* review, the trial court. This difference is of little, if any, moment.

In *Leonard v. State,* 290 Md. 295, 429 A.2d 538 (1981), we affirmed *Leonard v. State,* 46 Md.App. 631, 637–39, 421 A.2d 85, 88–89 (1980), for the "reasons set forth" in that opinion. In that case, the intermediate appellate court reiterated and explicated the principle enunciated in *Carr:* when the crucial witness has made a prior written statement, the existence of which is known, and testified to at trial, a request for disclosure of the statement for use in cross-examination is not a fishing expedition; to be discoverable, such statement, need only be "inconsistent" with the trial testimony of that crucial witness. Concerning the test for determining whether a statement is inconsistent with a witness' trial testimony, the *Leonard* court quoted a passage from *Jencks,* which the *Carr* Court approved:

> "Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. *Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency.* The omission from the report of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." (emphasis in *Leonard* )

46 Md.App. at 638, 421 A.2d at 89, quoting *Carr,* 284 Md. at 460–61, 397 A.2d at 608, quoting *Jencks,* 353 U.S. at 667, 77 S.Ct. at 1013, 1 L.Ed.2d at 1111. Proceeding from that premise, the court opined:

These more subtle aspects of potential inconsistency, intrinsically subjective, have to be viewed from the defendant's perspective, and can be properly weighed only by defense counsel (with the assistance of his client). A screening of the statement by the court cannot suffice as an effective substitute. The court cannot be expected to view in the same context as defense counsel these more latent and subtle gaps or differences; nor should it purport to do so. It is for that reason as well that the court erred. If any weight is to be given to the aforequoted considerations, as we think the Court of Appeals intended, it is incumbent upon the court, under the circumstances evident here, to permit counsel to inspect the statement and determine for himself whether it is or is not usable for cross-examination. The court still retains, of course, the ultimate right to determine whether the statement, or any part of it, is admissible in evidence, either as a document or through questions propounded to the witness. The issue here is not admissibility but inspection for possible use in cross-examination.

46 Md.App. at 638–39, 421 A.2d at 89.

"[I]nspection for possible use in cross-examination" prompted the subpoena in this case, just as it did in *Ritchie*. Rather than a written statement in the possession of the prosecutor, made by a witness who has already testified, as in *Carr* and *Leonard*, at issue in the case *sub judice*, as was also the case in *Ritchie*, is a file required to be kept by a State agency, here, the educational records of the victim maintained by the State Department of Education. Furthermore, in this case, unlike *Carr* and *Leonard*, but like *Ritchie*, whether anything in the records will impeach the witness's testimony, either because it exculpates petitioner, or it is arguably inconsistent with her trial testimony, must await a review of the file. In addition, while here, the subject of the records, and her parents, have a privacy interest in the records, and in *Ritchie*, the State had an overriding interest in the confidentiality of its child abuse records, in neither *Carr* nor *Leonard*, was there any compa-

rable interest. In *Carr* and *Leonard,* the request, made after the witness who gave it had testified, was for a specific statement to be used to confront the witness during cross-examination. In the instant case, as was also the case in *Ritchie,* the request for the file was made prior to trial, but its purpose was the same—to confront the witness, during cross-examination, with evidence disclosed by review of the file. Procedurally, this case and *Ritchie* are quite similar; however, they differ in the degree of confidentiality to which the records involved are entitled. This case is not identical to *Carr* and *Leonard* either; in neither of those cases was there a privacy interest running to the witness.

## VI.

At the hearing conducted on the petitioner's motion to compel disclosure of the victim's educational records, the State suggested that the threshold issue was whether the petitioner had made "at least some nominal showing of relevance", whether he established the "need to inspect," *i.e.,* a reasonable possibility that review of the records would result in discovery of usable evidence. Until that threshold was crossed, it said, the extent of access to the records could not be addressed; it could not be decided whether safeguards short of turning the entire file over to the petitioner for his unrestricted use were possible. Having inquired of petitioner how they were relevant, the court conducted an *in camera* review of the records. The court then determined that there simply was no relevant information to be disclosed.

The nature of the charges brought against the defendant is a relevant factor to be considered on the question of that defendant's need to have access to the victim's educational records. But that is by no means dispositive. Just because one is facing serious charges does not mean that a victim's educational records can be reviewed. To overcome a privacy interest in those records,

some relationship must be shown between the charges, the information sought, and the likelihood that relevant information will be obtained as a result of reviewing the records. Whether a sufficient relationship exists is, of course, dependent upon the circumstances, including the proffer of relevance that the defendant makes. And how specific the proffer is with respect to what is sought will have a direct bearing on whether direct access to the records, by the defendant or his or her representative, is necessary; the more specific the information sought to be uncovered, the less the necessity for direct access.

The issue before the court is another relevant factor. If, for example, the issue is identity, ordinarily the contents of a victim's educational files will not be relevant, whatever the charge. On the other hand, if the charge and trial evidence are that the offense was committed by a stranger, a proffer that the records may reveal a connection between the defendant and the victim, *i.e.*, that the victim and defendant were classmates or that the defendant was her homeroom teacher, presents a different situation; the records would certainly be relevant. Furthermore, when specific information is sought and its existence easily determined, the need for direct defendant access to the entire file is not critical, an *in camera* review may suffice. The specificity of the proffer of what is sought necessarily depends on the nature of the issue, rather than the extent of the defendant's knowledge of the contents of the records. When the issue is the credibility of the victim, a determination that the victim's educational records are relevant may have broader implications—it may require that the defendant have direct access to those records. Whether there is impeaching information in a file is not easily determined. Indeed, whether information is impeachment evidence, or may otherwise be characterized, often depends upon the circumstances, including context, and, to a large extent, the perception of the person interpreting it. *See Carr*, 284 Md. at 465–66, 397 A.2d at 612.

In the instant case, the petitioner is accused of sexual child abuse of his granddaughter, a very serious charge indeed. His version of the incident was diametrically, and irreconcilably, opposite the victim's version. The issue, quite clearly, was one of credibility. The Petitioner subpoenaed the victim's educational records in order effectively to cross-examine her concerning her motivation, bias, and veracity. It was for that reason that he proffered the longstanding antagonistic and hostile relationship between the victim's father, with whom, petitioner maintains, the victim identifies, and himself. His other proffers, including the suggestion that the records might show a pattern of acting out to gain attention, or of lying, go to establishing why, and how, the records conceivably could be used to attack the victim's credibility.[12] Given the issue before the court, and the seriousness of the charge the petitioner faced, these proffers, far from being frivolous, placed before the court the petitioner's legitimate concerns and gave plausibility to his stated need to review the records for relevant information.

Juxtaposed against petitioner's proffer is the victim's legitimate interest in the privacy of the contents of her educational records. The records contain, consistent with the petitioner's proffer, data, including psychological examinations and the like,[13] concerning the victim's mental and

---

**12.** We are not to be understood to say that the mere placement of a student in a special school or the fact that the student has learning disabilities and/or emotional or mental problems, is a sufficient basis for a trial judge to permit review of the education records of that student. There must be other circumstances, such as the nature of the charges, the relevance of the issue to be resolved, etc., which must be proffered, that make those records reviewable.

**13.** In colloquy with the court immediately prior to the *in camera* review, a representative of the Montgomery County School Board, pointed out that the file contained psychological and psychiatric information that not even the court could see. After some discussion that point appears to have been abandoned. In its brief, the State refers to the presence of psychological reports in the records to support the trial court's ruling and to demonstrate the closeness of this case to *Ritchie.* The Court's ruling was not, however, predicated

emotional condition, her ability to learn, etc. Should the petitioner be granted unrestricted access to the records, there is a risk that all such information could be disseminated and, in fact, bandied about at the trial. In that respect, there is force to the court's observation that the victim's educational future could be compromised by the petitioner questioning her extensively about her educational records. How significant that concern is, however, depends directly on the options available to the court; to the extent that the court has only two options—*in camera* review by the court alone or ordering unqualified access of the records to the accused—vindication of the victim's privacy rights may require a more restrictive attitude with respect to the accused's access to the victim's records. If there are other options, an intermediate position, perhaps, the accused's access may be expanded.

There are alternatives to *in camera* review of the witness's educational records by the court alone or their unqualified disclosure to the accused. In *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992 (1991), the Supreme Judicial Court of Massachusetts suggested some of them:

> Trial judges have broad discretion to control the proceedings before them. There is no reason why they cannot take steps to ensure that breaches of confidentiality attending discovery are limited only to those absolutely and unavoidably necessary to the preparation and presentation of the defendant's defense. For example, judges could allow counsel access to privileged records only in their capacity as officers of the court. Admission of or reference to any such information at trial could be conditioned on a determination (made after an in-camera hearing) that the information counsel seeks to use is not available from any other source.... Protective orders

on the applicability of any specific privilege excluding review of the records; it relied on the general right to privacy provided by the regulations.

(enforced by the threat of sanctions) requiring counsel and other necessary participants in the trial not to disclose such information could be entered.... Although these procedures would result in counsel for the defendant and the Commonwealth, rather than just the judge, viewing privileged records, if careful precautions in the order of those described above are taken, such breaches of confidentiality need not be any more intrusive or harmful than those attending in camera review of records by the judge alone. (citations omitted)

*Id.*, 570 N.E.2d at 1002. In that case, the defendant was charged with rape and related offenses. He sought disclosure for examination, of the privileged records of the victim's psychiatrist treatment at a hospital and by a social worker. Reversing the trial court's denial of the defendant's request to examine the records in company with the Commonwealth, the Court rejected "[t]he Federal standard requiring only an in camera review by the trial judge of privileged records requested by the defendant...." 570 N.E.2d at 1001.[14]

There is no reason that the options referred to by the Massachusetts court should be available only when, by application of a state's constitution, the rights of defendants are broadened; they are, in fact, available, in the court's discretion, in other cases. *See United States v.*

---

14. To reach this result, the Massachusetts court applied Article 12 of its State Constitution, thus, providing more protection to the accused than that provided by the federal Constitution. A similar result was reached in *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357, 1360 (1989) ("We hold therefore that appellant's counsel is entitled to see these hospital records in an *in-camera* proceeding to ensure their confidentiality. The trial court may issue such orders as will protect that confidentiality."). *See also Commonwealth v. Miller*, 399 Pa.Super. 180, 582 A.2d 4 (1990). On the other hand, other courts, indeed, a majority of them, have chosen to follow, without modification, *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). *In re Robert H.*, 199 Conn. 693, 509 A.2d 475, 484–85 (1986); *People v. Barkauskas*, 147 Ill.App.3d 360, 100 Ill.Dec. 821, 828–29, 497 N.E.2d 1183, 1190–91 (1986); *State v. Perry*, 552 A.2d 545, 547 (Me.1989); *State v. Paradee*, 403 N.W.2d 640 (Minn.1987).

*Nixon,* 418 U.S. 683, 715 n. 21, 94 S.Ct. 3090, 3111, n. 21, 41 L.Ed.2d 1039, 1068 n. 21 (1974); *In re United States,* 565 F.2d 19, 23 (2d Cir.1977); *United States v. Anderson,* 509 F.2d 724, 729 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975), *State v. Russell,* 580 S.W.2d 793 (Tenn.Crim.App.1978), *cert. denied,* April 9, 1979. Where sensitive matters are involved, it is the responsibility of trial judges to fashion remedies which will take account of the rights of the accused and, at the same time, protect the interest of victims. Permitting the petitioner's attorney to have access to the victim's educational records, subject to instructions as to what, and how, relevant information is to be used and otherwise restricting dissemination, is a responsible way in which to balance the parties' interests.

The concerns, expressed by us in *Carr,* 284 Md. at 472, 397 A.2d at 615, and by the Court of Special Appeals in *Leonard,* 46 Md.App. at 638–39, 421 A.2d at 89, that a trial court may not be the ideal reviewer of records for relevant exculpatory or impeaching information sought by a defendant, is as true in the case *sub judice* as it was when those cases were decided. When, in striking a balance between a victim's privacy interest and a defendant's right to a fair trial, there is an acceptable alternative to the defendant's nonrestricted access to the victim's records, it is not necessary to require the trial court to perform that function which is so foreign to its usual office. An expanded *in camera* proceeding, one in which counsel for the defense and the State participate or permitting the review of the records by counsel in their capacity as officers of the court are acceptable alternatives.

In such proceedings, counsel for the parties could be given access to the records, in the presence of the trial court, or alone, either as officers of the court, or under a court order prohibiting disclosure to anyone, including the defendant, of anything in the records unless expressly permitted by the court. A well-prepared defense counsel— one who has spoken extensively with his client, developed a

strategy for the trial and is familiar, thoroughly, with the State's case—would then be able to bring the advocate's eye to the review of the records, thus, protecting the interest of the defendant in ensuring that relevant, usable exculpatory or impeachment evidence is discovered. On the other hand, both by virtue of the court order restricting dissemination of the information contained in the records and by proceedings to determine admissibility of information defense counsel deems relevant and usable, the victim's right to privacy would be protected. Moreover, by having the benefit of counsel's input on the critical questions of relevance and admissibility, the court is enabled to rule more responsibly. Finally, such proceedings could potentially avoid unintentional, but harmful, disclosures.

## VII.

▮ We will remand for further proceedings for the reasons that follow. In cases in which access to confidential and/or sensitive records is sought by a defendant and which will be resolved based on credibility considerations, because of which, the trial court determines the "need to inspect" threshold has been crossed, the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality. Which option the court chooses must depend on various factors, including the degree of sensitivity of the material to be inspected; the strength of the showing of the "need to inspect"; whether the information sought is readily identifiable; considerations of judicial economy, etc. The greater the "need to inspect" showing, *i.e.*, as here, where it is self-evident, and the less sensitive the information, for example, the more likely the records will be reviewed jointly by the court and counsel or by counsel as officers of the court.

▮ In any case, when the court reviews the records alone, it must approach its task cognizant of the fact that it

is not an advocate and, in most instances, will not, and, indeed, cannot be expected, to discern all the nuances or subtleties which may render an innocuous bit of information relevant to the defense. Thus the court's review is not to determine whether, and, if so, what, is "directly admissible;" rather, it is to exclude from the parties' review material that could not, in anyone's imagination, properly be used in defense or lead to the discovery of usable evidence. Only when the records are not even arguably relevant and usable should the court deny the defendant total access to the records. In other words, except as to information, which, without regard to the perspective of the person conducting the review, has absolutely no possible relevance to the case,[15] the trial court's *in camera* review should not be conducted with preclusive intent.

■ The trial court reviewed the records to determine if there was, from its perspective, "any kind of evidence that would be directly admissible" for impeachment purposes. In so doing, it used the wrong and, indeed, an unduly strict, test. That conclusion is buttressed by our independent review of the records. The trial court's review should not only be aimed at discovering evidence directly admissible but also that which is usable for impeachment purposes, or that which would lead to such evidence.

■ We hold that, in this case, controlled access by counsel to the records is appropriate. On remand the court should determine whether that controlled access should be an *in camera* review with counsel present, or review by counsel, including counsel for the school board, as officers of the court, followed by a hearing on the admissibility of those portions of the records sought to be admitted by the petitioner.

JUDGMENT REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO

---

**15.** The trial judge should mark and seal the records excluded so that the judge's determination in that regard may be reviewed on appeal.

FURTHER REMAND TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.