UNITED STATES of America,
Plaintiff-Appellee,

v.

Delvin A. BATES, Defendant-Appellant.

No. 78–1814.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 12, 1979.

Decided March 26, 1980.

David R. Lee, Albuquerque, N. M., for defendant-appellant.

Thomas S. Udall, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., and David N. Williams, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, McKAY, Circuit Judge, and BRIMMER, District Judge.*

McKAY, Circuit Judge.

Bates was indicted for murder and as an accessory after the fact to murder.[1] He was found guilty as an accessory. On ap-

---

* Of the United States District Court for the District of Wyoming, sitting by designation.

1. Bates was convicted under 18 U.S.C. §§ 3, 1153. Both the victim and the alleged assail-

peal, Bates challenges the district court's refusal to permit him access to the transcript of the juvenile delinquency hearing of Herbert Yazzie. Yazzie, the primary witness against Bates, had been adjudicated a delinquent for the same murder. Bates also complains of certain subject matter restrictions placed on his exploration of Yazzie's prior bad acts and inconsistent statements.

Bates was unquestionably at the murder scene and involved in activities related to the murder. He convinced the jury that he was not an active participant in the murder itself, but he was unable to persuade the jury that his admitted actions after the fact were taken only out of fear of Yazzie.

## I.

On the night of January 21, 1978, a truck containing Bates, Yazzie and Jeffrey Bennalyson slid into a ditch along a muddy road. After refusing to provide assistance to the Bates group, another motorist, Palmer, was stabbed to death. The trial testimony of Yazzie and Bates differed significantly about those events, and Bennalyson was unavailable to provide an additional eyewitness view.[2]

Yazzie testified that, after Palmer refused to help and made a comment about a gun, Bates pulled Palmer from the car, threw him to the ground, and kicked him like a football. Yazzie held Palmer while Bennalyson stabbed him and then Yazzie in turn stabbed him several more times. Bates came to the scene, jumped up and down on Palmer's back, grabbed the knife, and also stabbed Palmer. After an unsuc-

cessful attempt to have people in a nearby trailer call the police to report the body, the three men dragged the body into the roadside ditch.

Bates testified that, after Palmer refused to help and threatened to shoot the Yazzie group, he and Palmer engaged in a short fight. Yazzie stayed with Palmer while Bates used Palmer's car to pull the truck from the ditch. Later, after seeing that Yazzie had stabbed Palmer, Bates helped drag and cover the body only because Bates was afraid of Yazzie. Yazzie appeared to be dazed, and he had previously threatened to shoot Bates. Bates' version was that throughout these proceedings, Benallyson remained asleep in the truck.

## II.

Bates claims that, because the court denied him the transcript of Yazzie's juvenile delinquency proceeding, his defense was improperly limited. In particular, Bates argues that the transcript may have contained prior inconsistent statements of Yazzie and other impeaching evidence. In addition, the transcript may have aided trial preparation and may have further "revealed the violent, incredible nature of Herbert Yazzie or may have supported the coercion defense of the defendant." Brief for Appellant at 8–9.

■ Although the government had a copy of the transcript[3] and did not object to the defendant's motions, the district court ruled that 18 U.S.C. § 5038 precludes granting adult defendants access to juvenile proceeding transcripts.[4] Section 5038 does re-

---

ants were American Indians, and the crime occurred in Indian country. Federal jurisdiction is not challenged. Record, vol. 3, at 156, 158.

2. Bennalyson, who had also been indicted both as a principal and as an accessory after the fact, was killed in an accident before trial.

3. The government agreed at oral argument that no statutory exception permitted the United States Attorney alone to receive the transcript. The Assistant United States Attorney stated that he had not relied on the transcript and, indeed, had not even looked at it, although

there was no ruling or other prohibition against his doing so. Record, vol. 3, at 342.

4. The court initially read § 5038 very expansively even to preclude admission of any *exhibits* used in the juvenile proceeding. *See* Record, vol. 3, at 213–15. The court later relented somewhat and permitted the use of some materials for impeachment purposes only. *See id.* at 221, 229.

In support of the denial of the transcript, the court also cited Fed.R.Evid. 609(d), Record, vol. 3, at 49–50, which makes "evidence of juvenile adjudication . . . generally not admissi-

quire the sealing of "the entire file and record of [the juvenile] proceeding" and prohibits later release, other than to meet an enumerated exception.[5] The first listed exception in the statute, however, appears on its face to provide authority for granting Bates' request. It allows release in response to "inquiries received from another court of law." 18 U.S.C. § 5038(a)(1).

■ We understand the government's concern that, if exceptions to the rule of confidentiality in juvenile proceedings are broadly interpreted, the very nature of juvenile proceedings will be changed.[6] However, the court-inquiry exception need not be strained to cover the special circumstances of this case.[7] When "the juvenile himself was involved in the transaction on which the prosecution of the defendant is based," *United States v. Chacon,* 564 F.2d 1373, 1376 (9th Cir. 1977), and the juvenile is also a critical witness against the defend-

ant, "the interest in providing a defendant with a fair trial is at least as substantial as the interests which underlie the additional [five] exceptions to the general rule of non-disclosure." *Id.* at 1375. The conflict with the policy of confidentiality is especially minimal where, as here, the juvenile by his own testimony makes public many of the most damaging particulars of the transaction. In addition, the judge, who had also presided at the juvenile proceeding, made public at the defendant's trial the fact that Yazzie had been adjudicated a juvenile delinquent. Record, vol. 3, at 69.

When the district court obtains the transcript, under the authorization of § 5038(a)(1), it should then examine the transcript *in camera* and release only the information that is of "exculpatory or impeachment value" to the adult defendant. *United States v. Chacon,* 564 F.2d 1373, 1376 (9th Cir. 1977). The *in camera* inspec-

---

ble." However, this provision falls within a rule dealing with "Impeachment by Evidence of Conviction of Crime"; at issue in this case is not admission of the *fact* of adjudication. Indeed, Yazzie's connection with the crime was clear from his own testimony. Moreover, a rule of evidence does not provide authority to refuse disclosure for nonevidentiary purposes.

5. Section 5038(a) provides:

Throughout the juvenile delinquency proceeding the court shall safeguard the records from disclosure. Upon the completion of any juvenile delinquency proceeding whether or not there is an adjudication the district court shall order the entire file and record of such proceeding sealed. After such sealing, the court shall not release these records except to the extent necessary to meet the following circumstances:

(1) inquiries received from another court of law;

(2) inquiries from an agency preparing a presentence report for another court;

(3) inquiries from law enforcement agencies where the request for information is related to the investigation of a crime or a position within that agency;

(4) inquiries, in writing, from the director of a treatment agency or the director of a facility to which the juvenile has been committed by the court;

(5) inquiries from an agency considering the person for a position immediately and directly affecting the national security; and

(6) inquiries from any victim of such juvenile delinquency, or if the victim is deceased from the immediate family of such victim, related to the final disposition of such juvenile by the court in accordance with section 5037.

Unless otherwise authorized by this section, information about the sealed record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege. Responses to such inquiries shall not be different from responses made about persons who have never been involved in a delinquency proceeding.

6. Confidentiality encourages "the juvenile to discuss his actions freely and completely so that rehabilitation can commence without delay." *United States v. Chacon,* 564 F.2d 1373, 1377 (9th Cir. 1977) (Kennedy, J., concurring).

7. Legislative documents are unfortunately of little help in determining the precise boundaries of § 5038. *See* S.Rep.No.1011, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5283, 5321. The government argues that, because Congress must have known that juveniles and adults are often involved in crimes together, the absence of a specific statutory exception to cover use at adult trials is significant. Brief for Appellee at 15. We will not hobble our interpretation of statutes with the requirement that every circumstance meant to be covered must be specifically mentioned.

tion should protect the juvenile's interests insofar as those interests are consistent with the adult defendant's right to a fair trial. However, because that right has a strong constitutional basis, the district court should approach release of the transcript with an attitude of liberality.

We do not feel it necessary to discuss in detail the constitutional underpinnings that mandate a liberal policy of release where the juvenile is a significant prosecution witness. It is sufficient to note that the Confrontation Clause protects Bates' access to impeachment materials in the transcript. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); [8] *United States v. Chacon*, 564 F.2d 1373, 1376 (9th Cir. 1977) (Kennedy, J., concurring). Furthermore, the government's necessarily central role in a juvenile adjudication raises fundamental questions about the one-sided use of such hearings. *Cf. Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). Finally, the district court should be reluctant to substitute its judgment about the ultimate exculpatory or impeachment value for the judgment of the defense counsel—and, ultimately, the jury. *See Davis v. Alaska*, 415 U.S. at 317, 94 S.Ct. at 1110; *Jencks v. United States*, 353 U.S. at 668–69, 77 S.Ct. at 1013.[9]

We do not believe that the lengthy cross-examination of Yazzie renders the denial of the transcript harmless error. The government argues that Yazzie's perceptions and biases were "exhaustively and professionally explored," and that "further impeachment . . . was unnecessary." Brief for Appellee at 18. However, much of the

Yazzie cross-examination necessarily related to the murder charge, and the jury apparently had reasonable doubts about that portion of Yazzie's testimony. We cannot say beyond a reasonable doubt that further impeachment materials would not have destroyed Yazzie's remaining credibility. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Although the government believes that Bates' own testimony constitutes a "judicial confession" on the accessory issue, Brief for Appellee at 20, the transcript might well have solidified Bates' defense of coercion.

Since material with possible exculpatory or impeachment value was not made available to the defendant in this case, we must remand for disclosure to the defendant of all such material and for a new trial.

### III.

■ Bates urges that, in addition to the denial of the juvenile proceeding transcript, other improper restrictions were placed on his cross-examination of F.B.I. agent Baxter and of Yazzie and on his own testimony. In particular, Bates was denied the opportunity (1) to question Baxter about statements Yazzie made to him; (2) to question Yazzie about a prior automobile theft arrest and about an alleged prior shooting incident; and (3) to testify himself regarding that incident. We find no general abuse of the wide discretion the trial court has in fixing the scope of cross-examination, *see United States v. Speir*, 564 F.2d 934 (10th Cir. 1977), and in admitting evidence. However, we believe that Bates was improperly limited in obtaining testimony relating to his defense of coercion.

---

8. In *Davis*, the Court stressed that "the right of confrontation is paramount to the . . . policy of protecting a juvenile offender." 415 U.S. at 319, 94 S.Ct. at 1112.

9. In *United States v. Chacon*, 564 F.2d 1373 (9th Cir. 1977), the circuit court itself reviewed the juvenile proceeding transcript and decided that nothing had sufficient exculpatory or

impeachment value to require release. *Id.* at 1376. We do not have the record of the juvenile proceedings before us. In its absence, we cannot believe that the district court's review will find nothing of value here. Yazzie's prior testimony is, if nothing else, a potentially fertile source of prior inconsistent statements.

Bates was permitted to testify and to question Yazzie about a threat against Bates alleged to have been made by Yazzie in 1977. Record, vol. 4, at 279, 404. He was not permitted to testify or to ask Yazzie about a shooting which occurred the same night. *Id.* The jury was properly instructed on Bates' coercion defense, which requires a "well-founded fear of impending death or serious bodily injury." Record, vol. 4, at 521. The threat and the alleged shooting in 1977, coupled with Yazzie's admitted actions on the night of the Palmer murder, could support a finding of "well-founded fear." The jury might well disbelieve such a posited fear—particularly given Bates' voluntary association with Yazzie on the night in question—but the alleged shooting incident was clearly relevant to an essential element of Bates' defense.

## IV.

As his final point on appeal, Bates charges that the district court committed plain error by admitting his inculpatory statements without a full suppression hearing. We need not resolve this issue, however, because of our treatment of the juvenile proceeding transcript question. Since the case must be retried, we assume that, upon proper motions, all necessary hearings will be held.

REVERSED.