769 A.2d 1015

**Ronald G. JONES**

v.

**STATE of Maryland.**

No. 346, Sept. Term, 2000.

Court of Special Appeals of Maryland.

April 5, 2001.

---

14

Brian J. Murphy, Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before SALMON, THOEDORE G. BLOOM (Ret'd, Specially Assigned) and RAYMOND G. THIEME, Jr. (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, Jr., Judge (Retired, Specially Assigned).

In this case, we are called upon to review the constitutionality of the finding of facts necessary to invoke an enhanced sentence by the sentencing judge instead of by the jury.

Ronald G. Jones appeals from his conviction by a jury in the Circuit Court for Baltimore City of possession with intent to distribute cocaine and possession of cocaine, and his sentence, as a third-time offender, of twenty-five years in prison without the possibility of parole for his conviction of possession with intent to distribute cocaine. Appellant presents two questions on appeal:

1. Was the evidence sufficient to sustain his conviction for possession with intent to distribute cocaine?
2. Did the trial court err in sentencing appellant as a third-time offender to twenty-five years in prison without the possibility of parole?

## FACTS

Police Officer Morgan Jones testified that, at approximately 11:45 a.m., he was driving an unmarked patrol car down "a little path," behind the 500 block of Edgewood Street, leading to the 500 block of Dennison Street. Officer Jones was with Officers Todd Ring and Nicole Monroe. Officer Jones described the area of the "rear even side" of 500 Dennison Street as having row houses, then

a small alley that's running east to west. Right next to the alley is a ... basketball court, playground. And if you keep going westbound ... one side is a little parking pad, and south of the parking pad is an open field with grass there.... [T]here's two trees in that little field.

Officer Jones explained that "cutting through the field is a little pathway that [the officers] go down sometimes" to get to

the 500 block of Dennison Street. He testified that he drove there because he knew that "drug dealers stash drugs" in the area, and because the 500 block of Dennison Street is a "high narcotic area."

Officer Jones and Officer Ring both testified that they saw appellant running in the grass area toward a tree. They testified that, when appellant reached the tree, he stopped, bent over, and picked up a clear plastic bag. According to the officers, while appellant was bent over, he looked in their direction, then put the bag back down, stood up, turned around, walked several feet, and picked up a little stick. Both officers stated that the incident took "seconds."

Officer Jones stopped his vehicle. Officer Ring got out, went to the tree, and found a clear plastic bag containing twenty-six small ziplock bags. The smaller bags each contained a white rock substance that the officers believed to be crack cocaine. Officer Jones testified that each piece was worth approximately $10, and that the entire bag was worth about $260. Officer Jones stopped appellant and arrested him. The substance was subsequently tested and proved to be cocaine.

Appellant was searched after his arrest. The officers recovered a total of $200 in currency, consisting of seven $20 bills, five $10 bills, one $5 bill, and five $1 bills. Officer Ring also testified that the bills were "crammed into" appellant's pocket "all in these separate little amounts all shoved in there individually" and that having currency in small denominations suggested that "they were profits from these little bags that he had already sold that morning."

Officer Jones qualified as an expert in the field of packaging, identification, and distribution techniques of street-level narcotics. He testified that twenty-six bags of cocaine indicated street level distribution. He explained that drug dealers do not place their "stashes" in areas accessible to purchasers of narcotics. Buyers usually stayed on the street or on the corner.

Both officers testified that they had not seen anyone selling drugs on the street or waiting to purchase drugs. Officer Ring explained, however, that from his location he would not have seen people on the corner of Edmondson and Dennison or in the 500 block of Dennison Street, both of which are high drug areas.

Appellant introduced into evidence photographs of the area. He did not testify, but presented evidence from Tina Allen, a resident of Dennison Street. Ms. Allen testified that she was on her way to the corner store on the morning in question and saw appellant walking past her house. She testified that she had not met appellant prior to that day. She explained that she noticed him because he was "crouched over," as if in pain. Ms. Allen stated that she asked appellant if he was okay, and he told her that he had Crone's Disease.

Ms. Allen further testified that she walked with him until he crossed the street to walk up the lot. She stated that he was still walking crouched over when one of the police officers "ran over to [appellant] and grabbed him." She stated that she did not see him pick up a bag under a tree.

## DISCUSSION

### I.

### Sufficiency of the Evidence

Appellant's initial contention is that the evidence was insufficient to establish that he had dominion or control over the cocaine or that he was aware of the presence and general character of the substance in the bag.

The standard for our review of the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). In assessing the sufficiency of the evidence presented at trial, we consider not "whether the

evidence *should have* or *probably would have* persuaded the majority of fact finders but only whether it *possibly could* have persuaded *any* rational fact finder." *Fraidin v. State,* 85 Md.App. 231, 241, 583 A.2d 1065 (1991) (emphasis in original).

It was the jury's province to decide whether a sufficient nexus existed between appellant and the items seized. The jury believed that there was and returned a verdict of several convictions against appellant. It suffices to say that we are fully convinced that the admissible evidence adduced at trial either supported a rational inference of, or demonstrated directly or circumstantially, the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of appellant's possession of the evidence seized, and, therefore, of his guilt for the offenses charged. Thus, it was proper for the trial court to submit the case to the jury for its appraisal. *Shoemaker,* 52 Md.App. at 486, 451 A.2d 127; *Metz v. State,* 9 Md.App. 15, 23, 262 A.2d 331 (1970); *Williams v. State,* 5 Md.App. 450, 459, 247 A.2d 731 (1968).

In the present case, Officer Jones testified that the 500 block of Dennison Street was a "high narcotics area." There was evidence at trial that appellant had been running to the tree under which the bag was located when he turned around, saw the officers' vehicle, and then dropped the clear plastic bag that contained twenty-six smaller bags inside. The jury could infer that the contents of the bag could have been immediately observable, that appellant was aware of the illicit nature of the bag's contents, and that he was not merely a passerby who saw a bag, examined it briefly, and decided he did not want it.

In addition, Officer Jones explained to the jury that "stashes" were kept away from the place where sales were made. Officer Ring testified that appellant's money was in small denominations, and "crammed into his pocket" and that "all these separate little amounts [were] all shoved in there individually," suggesting that they were the fruits of previous sales. The evidence was clearly sufficient to sustain appellant's convictions.

## II.

### (a)

### Enhanced Punishment

Appellant's next contention is that the trial court erred in sentencing him to a term of twenty-five years' incarceration without the possibility of parole pursuant to Md.Code, Article 27, § 286(d)(1).[1] He contends that the evidence was insufficient to establish that he met the requirements of Section 286(d)(1) because the testimony at his sentencing hearing was

---

1. Md.Ann.Code art. 27, § 286 (1999) § 286. Unlawful manufacture, distribution, etc.; counterfeiting, etc.; manufacture, possession, etc., of certain equipment for illegal use; keeping common nuisance

   (d) Additional penalty for one or two previous offenses.—

   (1) A person who is convicted under subsection (b)(1) (possession of a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture) ... shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years and subject to a fine not exceeding $100,000 if the person previously:

   (i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and (ii) Has been convicted twice, where the convictions do not arise from a single incident:

   1. Under subsection (b)(1) ...;

   (2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with § 4–305 of the Correctional Services Article.

   (3) A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding offense.

   (e) Additional penalty for three or more previous offenses.—

   (1) A person who is convicted under subsection (b)(1) ... shall be sentenced to imprisonment for the term allowed by law, but in any event, not less than 40 years and subject to a fine not exceeding $100,000 if the person previously has served 3 separate terms of confinement as a result of 3 separate convictions:

   (I) Under subsection (b)(1) ...;

   (2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with § 4–305 of the Correctional Services Article.

that his prior sentence was imposed "as a result of a violation of probation." He further contends that his prior convictions and sentence should have been determined by a jury.

Pursuant to Maryland Code, Article 27, § 286(d)(1) and (2), an individual who has been convicted of possession with intent to distribute cocaine, who has been convicted of that offense twice previously, and who "[h]as served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a [previous] conviction" of possession with intent to distribute cocaine, must, upon being convicted for a third time of the crime, be sentenced to a term of not less than twenty-five years' incarceration without the possibility of parole. At appellant's sentencing hearing, the State sought to prove that appellant was subject to the enhanced penalty.

Rochelle McQueen, an expert in the area of fingerprint identification, testified that appellant was the same individual who had been convicted in prior cases nos. 291080037 and 291269007. The parties stipulated "to Case Nos. 291080037 and 291269007 and the commitment record for 291080037." Those cases involved possession with intent to distribute controlled dangerous substances. Susan Bauer, an agent of the Division of Parole and Probation, testified that she had reviewed appellant's record and that there had been a period of incarceration "for a violation of probation" which was imposed on June 8, 1992. Appellant had been paroled on July 23, 1997.

After the witnesses testified, the prosecutor stated that she had proved "beyond any doubt" the prior convictions and incarceration. Appellant did not comment. The prosecutor told the trial court that the State was invoking the twenty-five year no-parole sentence. The following occurred:

THE COURT: Twenty-five, no parole, that's your recommendation?

[PROSECUTOR]: Your Honor—

THE COURT: Mandatory?

[PROSECUTOR]:—it's mandatory.

Defense counsel stated that he had told appellant that it was mandatory. He asked that appellant be given credit for the home detention served prior to trial.

In pronouncing the sentence, the court stated, "25 years, credit for time served, the entire time served as articulated by your counsel." He then asked, "I have to say without parole?" and, when told that he did, said, "Twenty-five years without parole, credit for time served."

■■■ Appellant contends that "the trial court did not find the necessary two prior qualifying convictions and the necessary actual service of 180 days under one of those convictions." He argues that the trial court simply imposed a sentence of "25 years, credit for time served," and, when prompted, changed the sentence to include the no-parole provision. We disagree. Absent an indication to the contrary, trial courts are presumed to know the law and apply it correctly. *Howard v. State*, 112 Md.App. 148, 160, 684 A.2d 491 (1996); *Hebb v. State*, 31 Md.App. 493, 499, 356 A.2d 583 (1976). Accordingly, we presume that the trial court found the necessary prerequisites beyond a reasonable doubt. *See id.* It was unnecessary for the trial court to enunciate its findings, especially in a case such as the present one, where there was no dispute about appellant's prior convictions or incarceration. Moreover, we believe that the trial court's inquiry referred not to whether it had to impose the sentence, but only to whether it specifically had to articulate the "no parole" provision.

■■■ Appellant further contends that his incarceration was not "a result of a conviction of a previous violation" because Ms. Bauer testified that the sentence was for a violation of probation. As appellant himself notes, however, when a sentence is executed as a result of a violation of probation, the "original sentence is the only true punishment; the probation revocation is merely the withdrawal of favorable treatment

previously accorded the defendant." *Clipper v. State*, 295 Md. 303, 313, 455 A.2d 973 (1983). This point was again emphasized in *Moats v. Scott*, 358 Md. 593, 596–97, 751 A.2d 462 (2000). Judge Wilner, writing for the Court of Appeals, stated:

> When a court imposes a sentence and then, acting under either § 641A(a)(1) or (3), suspends execution of all or part of that sentence in favor of probation, and later strikes the probation and directs execution of all or part of the previously suspended part of the sentence, the court does not, at that time reimpose all or any part of the sentence. The full sentence has already been imposed and does not need any reimposition. The effect of the court's action is simply to lift the previously ordered suspension and direct execution of the now unsuspended part. In those rather rare situations in which the court, acting under § 641A (a)(1), has deferred imposition of sentence in favor of probation and later revokes the probation, it proceeds then to impose sentence for the first time.

■ The trial court further correctly awarded the appellant credit for his home detention prior to trial. In *Dedo v. State*, 343 Md. 2, 680 A.2d 464 (1996), the question before the court was whether Maryland Code (1957, 1992 Repl.Vol., 1995 Supp.) Art. 27, § 638C(a),[2] requires that a defendant be granted credit toward his sentence for the time he spent in home detention between his conviction and sentencing. Speaking for the Court, Judge Raker stated:

---

2. Section 638C(a) provides in pertinent part:

Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time spent in the custody of any state, county or city jail, correctional institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based, and the term of a definite or life sentence or the minimum and maximum terms of an indeterminate sentence shall be diminished thereby.

In the instant case, the restraints placed upon Dedo while in home detention clearly were sufficiently incarcerative to satisfy the custody requirement of Art. 27, § 638C(a).

*Id. at* 12–13, 680 A.2d 464.

## II.

### (b)

#### *Apprendi v. New Jersey*

■ Appellant's final challenge to his sentence is that the issue of whether he qualified for the enhanced, mandatory sentence should have been determined by his jury. Appellant recognizes that under Maryland Rule 4–245(d) the issue is reserved to the sentencing court, but he suggests that the validity of that procedure is brought into question by the recent United States Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In *Apprendi v. New Jersey*, the appellant fired several shots into the home of an African–American family and made a statement—which he later retracted—that he did not want the family in his neighborhood because of their race. He was charged under New Jersey law with, *inter alia*, second degree possession of a firearm for an unlawful purpose, which carries a prison term of five to ten years. The count did not refer to the State's hate crime statute, which provides for an enhanced sentence if a trial judge finds, by a preponderance of the evidence, that the defendant committed the crime with a purpose to intimidate a person or group because of, *inter alia*, race. After appellant pleaded guilty, the prosecutor filed a motion to enhance the sentence. Satisfied that the preponderance of the evidence showed that the shooting was motivated by racial bias, the trial judge imposed an enhanced penalty under New Jersey law.

Appellant appealed his enhanced sentence, asserting that this law violated the Due Process Clause's guarantee that every sentence-increasing fact be found by a jury under the

reasonable doubt standard. The Superior Court of New Jersey, Appellate Division, dismissed his challenge and affirmed the extended sentence. The court noted that due process does not require such sentencing factors to be proved beyond a reasonable doubt. A divided State Supreme Court held that a jury is not required to determine, beyond a reasonable doubt, whether a particular defendant acted with a biased purpose in violating the law and affirmed. The court reasoned that a biased purpose is not an element of the offense and, therefore, does not require a jury determination beyond a reasonable doubt. Rather, the court declared that it is proper for a judge to utilize the preponderance of the evidence standard to decide the existence of such a biased purpose. Rejecting the notion that it is an element of an offense, the court asserted that, similar to recidivism, a biased purpose is a traditional and objective sentencing factor.

The Supreme Court reversed. Mr. Justice Stevens, writing for the Court stated:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*[, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311]. *Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S. at 252–253[, 119 S.Ct. 1215] (opinion of STEVENS, J.); *see also* 526 U.S. at 253[, 119 S.Ct. 1215] (opinion of SCALIA, J.).

120 S.Ct. at 2362–63 (emphasis supplied).

The need for a jury to make the biased purpose determination is apparent from the facts of the *Apprendi* case itself.

While Apprendi initially admitted that he shot at the house because he wanted to keep African–Americans out of his neighborhood, he later retracted this statement. Thus, reasonable persons could disagree as to Apprendi's mental state at the time of the shooting. A jury is best suited to make this determination because it is factual.

■ *Apprendi* stands for the proposition that facts that increase a defendant's punishment must be proved beyond a reasonable doubt in an appropriate case.[3] In *Jones v. State*, 324 Md. 32, 37, 595 A.2d 463 (1991), however, the Court stated:

> Where the General Assembly has required or permitted enhanced punishment for multiple offenders, the burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the existence of all of the statutory conditions precedent for the imposition of enhanced punishment.

The *Apprendi* Court did not deal with the specific question of whether the fact of a prior incarceration was a permissible sentencing factor to be decided by a judge. In our view, *Apprendi* does not require a jury determination of prior convictions or incarceration resulting from those convictions. Rather, it concerns the manner in which states are required to establish the existence of bias.

---

3. In *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court considered whether the federal carjacking statute's escalating provisions were separate offenses or sentencing factors. At his arraignment the judge told Jones that he faced a maximum sentence of 15 years on the carjacking charge. Consistently with this advice, the District Court's jury instructions defined the elements subject to the Government's burden of proof with no mention of serious bodily injury. The jury found Jones guilty. The case took a new turn, however, with the arrival of the presentence report, which recommended that petitioner be sentenced to 25 years for the carjacking because one of the victims had suffered serious bodily injury. The trial court's sentence of 25 years was affirmed by the Ninth Circuit Court of Appeals. In reversing, the Supreme Court looked to the intent of Congress and noted that "the likelihood that Congress understood injury to be an offense element here follows all the more from the fact that carjacking is a type of robbery, and serious bodily injury has traditionally been treated, both by Congress and by the state legislatures, as defining an element of the offense of aggravated robbery."

*Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), however, indicates that recidivism is a sentencing factor that need not be submitted to a jury. *Almendarez–Torres* had been indicted by a federal grand jury for being found in the United States after having been deported, in violation of a federal statute that made it illegal for a deported alien to return to the United States without special permission of the Attorney General.[4]

Almendarez–Torres pled guilty and, based upon his admission that he had returned to the United States after being deported for three earlier convictions of aggravated felonies, the prosecution sought to increase his maximum sentence to twenty years, pursuant to federal enhancement legislation.[5] At his sentencing, Almendarez–Torres argued that re-entry after deportation for aggravated felonies, which carries a maximum sentence of twenty years, constituted a separate offense. He argued that any sentence longer than two years was invalid because the recidivism enhancement was an element of the twenty-year sentence offense. Any evidence of earlier aggravated felony convictions must be pled in the indictment as a distinct element of the offense, since such a finding would increase the maximum prison sentence to which he would be exposed. The District Court rejected his argument and sentenced him to eighty-five months' imprisonment.

The Fifth Circuit Court of Appeals upheld the District Court's rejection of Almendarez–Torres's argument and found that re-entry after deportation for aggravated felonies was not a separate crime but, rather, a penalty enhancement.

The Court found that the question presented was whether Congress intended to set forth a sentencing factor or a separate crime. In a 5–4 decision, the Supreme Court held that the federal enhancement statute merely created a "sentencing factor" and need not be pled in the indictment. Writing for the majority, Justice Breyer noted "that the relevant

---

4. 8 U.S.C. § 1326.

5. 8 U.S.C. § 1326(b)(2).

statutory subject matter is recidivism. That subject matter—prior commission of a serious crime—is as typical a sentencing factor as one might imagine." *Id.* at 230, 118 S.Ct. 1219. Further, an examination of the statute disclosed that the language linking the simple offense and the enhancement indicated an interdependency. The Court found: Finally, the contrary interpretation—a substantive criminal offense—risks unfairness. If subsection (b)(2) sets forth a separate crime, the Government would be required to prove to the jury that the defendant was previously deported "subsequent to a conviction for commission of an aggravated felony." As this Court has long recognized, the introduction of evidence of a defendant's prior crimes risks significant prejudice." *Id* at 235–36, 118 S.Ct. 1219.

Accordingly, the majority held that the correct interpretation was to provide additional penalties. To assist the analysis, the majority looked to the circumstances under which the particular provision was adopted. The Court determined that there was no indication that Congress intended to create a separate substantive crime when it enacted the provision. Rather, the language of the statute suggested that Congress intended the subsection to "describe" an alien who was "guilty of a felony" as defined in the statute and "convicted thereof."

After determining that Congress intended the subsection to set forth a sentencing enhancement, the majority addressed the issue of whether the Constitution permits Congress to treat the recidivism factor in the statute as a sentence enhancement, even though it substantially increases an accused's maximum potential punishment. The Court pointed out that, although the maximum penalty for the crime is increased and created a wider range of appropriate punishments, these differences do not change the constitutional outcome. It noted that recidivism, the sentencing factor at issue, is a traditional basis for a sentencing court's increasing an offender's sentence, that the prior conviction triggers an increase in the maximum permissive sentence, and not a mandatory minimum sentence, and that judges have typically exercised their discretion within broad statutory ranges. *Id.* at 245, 118 S.Ct.

1219. In sum, the majority, based on statutory interpretation, rejected *Almendarez–Torres's* interpretation. The question then is, what did the Maryland legislature intend in adopting Article 27, Section 286(d)?

In *Wadlow v. State,* 335 Md. 122, 642 A.2d 213 (1994), the Court was presented with this question: does the mandatory sentencing provision of Article 27, Section 286(f), which deals with the possession with intent to distribute 448 grams or more of cocaine, require that either the trier of fact or the sentencing judge make specific findings, and, if so, what standard of proof is required, and how must these findings be set forth in the opinion, judgment, or orders of the Court?

Judge McAuliffe, speaking for the Court stated:

The principal question presented by this case is one of legislative intent.

. . .

If, as the State contends, the legislature intended that the predicate facts of subsection (f) mandating an enhanced penalty were to be found exclusively by the sentencing judge, that sentencing scheme would not violate any provisions of the United States Constitution.

. . .

In Maryland, however, we have generally drawn a distinction between sentence enhancement provisions that depend upon prior conduct of the offender and those that depend upon the circumstances of the offense. In the former situation, involving recidivism, we have made it clear that determination of the requisite predicate facts is for the sentencing judge. See Maryland Rule 4–245(e) ("The court shall determine whether the defendant is a subsequent offender . . . ."). The State must give timely notice to the defendant of its intention to seek enhanced penalties because of one or more prior convictions, but that notice is not filed with the court until after the acceptance of a guilty or nolo contendere plea, or after conviction. The applicable

Rule also provides that "the allegation that the defendant is a subsequent offender is not an issue in the trial on the charging document. . . ." Md. Rule 4–245(d).

In the latter case, however, where the legislature has prescribed different sentences for the same offense, depending upon a particular circumstance of the offense, we have held that the presence of that circumstance must be alleged in the charging document, and must be determined by the trier of fact applying the reasonable doubt standard.

*Id.* at 128–129, 642 A.2d 213 (footnote omitted).

There is no doubt whatsoever that the legislature intends prior convictions and incarceration to be sentencing factors. Subsequent offender statutes have existed in this country and in England for centuries. The propriety of imposing more severe punishments on subsequent offenders is no longer open to serious constitutional challenge. *Lee v. State,* 332 Md. 654, 659, 632 A.2d 1183 (1993) (citations omitted). In the present case, appellant's enhanced sentence is based on recidivism. *Apprendi* does not require that these issues be submitted to a jury.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**