955 A.2d 794

**Abdul SAMIE**

v.

**STATE of Maryland.**

**No. 894, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 3, 2008.

George E. Burns, Jr. (Nancy S. Forster, Public Defender, on brief), for appellant.

Robert Taylor (Douglas F. Gansler, Atty. Gen. on brief), for appellee.

Panel: SALMON, EYLER, DEBORAH S., MEREDITH, JJ.

MEREDITH, J.

On November 30, 2004, Abdul Samie became involved in an altercation with a family that was seeking to rent an apartment from him. How and why the skirmish began and escalated are questions that were vigorously disputed by the parties and witnesses. Samie, the appellant, was charged with multiple counts of assault and attempted murder, but was convicted of a single count of attempted second degree assault. One of the participants in the altercation was the teenage son of the family we shall refer to as the "Doe" family, Tyriq Doe. Tyriq's involvement in the fight had led to juvenile delinquency proceedings against him. At Samie's criminal trial in the Circuit Court for Baltimore City, Samie's counsel asked the trial court to order the State to produce for inspection and potential use as impeachment material an agreed statement of facts that had been prepared and used in Tyriq's juvenile proceedings. The trial court refused to provide Samie's counsel any access to the statement.

Although the trial court was correct that Maryland law strives to protect the confidentiality of the records of juvenile proceedings, the court erred in failing to consider whether there was good cause to order access for Samie, a defendant in a criminal proceeding arising out of the same circumstances that led to the juvenile proceedings. Because the statute imposing the confidentiality requirement—Maryland Code (1973, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJP"), § 3–8A–27(b)(1)—specifically contemplates that a court may order disclosure "upon good cause shown," and because the trial court did not make any finding regarding the

existence of good cause for disclosure to Samie, we shall vacate the judgment and remand for further proceedings.

## Factual Background

On the occasion of the encounter between Samie and the Doe family, Samie was at the apartment complex he owns and manages, attending to some landlord-tenant matters. The Doe family observed a "for rent" sign, and approached Samie to inquire about renting an apartment. When Samie told the Does that he had no apartment for rent, the father, "Mr. Doe," pointed to the sign. Samie said that the sign was old. According to one tenant who witnessed the encounter, Mr. Doe became belligerent and said to Samie, "you mean you don't want to rent it to a black man." Samie denied that was so, and a physical altercation followed. According to one of Samie's tenants who testified as a witness for the defense, Mr. Doe pounced upon Samie "from behind and begin [sic] hammering down on him with his fist primarily, hitting him, striking him on the head." Samie yelled for onlookers to call the police.

Samie similarly testified that Mr. Doe had attacked him after being told there were no apartments available. According to Samie, as he tried to move away from Mr. Doe, Tyriq, a tall and husky youth, joined in the attack. Some witnesses recalled that, at some point, Tyriq was wielding a knife. Samie managed to get into his Dodge van and start the engine. As Samie began driving the van, he struck Mr. Doe, then backed up and struck Ms. Doe and her six-year-old child, and then crashed the van into a tree. Samie contended that he had lost his glasses in the scuffle and could not see where he was going. Samie claimed that he did not intend to strike anyone with the vehicle, but simply wanted to get away from his assailants.

Mr. Doe was taken to Shock Trauma. He suffered two broken legs and a neck fracture, and was in the hospital for 16 days. Both Mr. Doe and Ms. Doe instituted civil suits against Samie.

Samie was taken to The Johns Hopkins Hospital. He was treated for a knife wound to his head and four wounds to his chest, as well as numerous bruises.

On the third day of Samie's criminal trial, defense counsel proposed to call Tyriq as a witness for the defense, and asked the court to order the State to produce the statement of facts that had apparently been agreed to at Tyriq's juvenile proceedings. Defense counsel stated:

> Your Honor, that [is] what I learned this morning, that this witness, Mr. [Tyriq Doe], in fact, during the juvenile proceedings agree[d] to a specific statement of facts that was produced by the State at that time, during the juvenile proceedings. That has not been disclosed to me [in] discovery, and I believe the State's position is that I'm not entitled to it, in light of the fact that this was a juvenile proceeding[ ]. In light of the fact that this witness is here to testify, I have specific questions, I want to ask him.... I would ask the Court to have the State release to me [ ] the statement of facts used within the juvenile proceedings.

The prosecutor opposed the disclosure, arguing that, "under the rules, matters dealing with juvenile adjudications are to be kept confidential." Tyriq's personal counsel also lodged an objection to disclosure of the statement. The trial court asked the prosecutor whether the statement presented any different facts than the State had elicited during Samie's trial. The prosecutor responded that it did not, but noted that she had not read the statement previously and was in the process of reading it during their discussion. The trial court admonished the prosecutor to turn over the agreed statement of facts if it differed from what the State contended happened in the present case. After a brief delay, the prosecutor reported that there was nothing different in the statement.

The trial court stated that it would review the statement *in camera.* But when the court reconvened for the afternoon session, the trial court announced that, based upon the court's understanding of Maryland Rule 11–121, there could be no

access to the record from Tyriq's juvenile proceeding. The transcript reflects the following:

> THE COURT: Okay. I did research on that, and *I'm not entitled to it,* you are not entitled to it, *none of us are entitled to it.* So I'm going to return the statement of facts to [the prosecutor].
>
> Referring to Maryland Rule 11–121, nothing associated with the juvenile Court can be released for any reason[, u]nless it is expressly provided by law, [*i.e.,* unless] there is express permission under the law that would allow [release. W]hich means ... you have got trouble with it, and you understand the trouble with it.
>
> [DEFENSE COUNSEL]: Would you say ... we are limited on what we can ask on impeachment[?]
>
> THE COURT: Well, I don't disagree with you, but I think that is the law, so I would follow the law.

(Emphasis added.)

Tyriq then testified that his family met Samie for the first time on the date they went to ask about renting an apartment. According to Tyriq, no one hit anyone until Samie drove his van into the Does as they were walking away. Tyriq testified that he never hit Samie, but contended that he had found a knife in the gutter, and had stabbed Samie, but only after Samie had driven the van into the family members.

### Disclosure of Confidential Juvenile Records

██ On appeal, Samie asserts that the trial court erred in not permitting defense counsel to review the statement of facts Tyriq agreed to in connection with a juvenile proceeding arising out of the same occurrence that led to Samie's prosecution. The State counters that, pursuant to Rule 11–121 and CJP § 3–8A–27(b)(1), Samie was not entitled to review the record, and "an *in camera* review of the document in question is all that is required."

In the subtitle of the Maryland Code dealing with juvenile causes, CJP § 3–8A–27(b)(1) provides:

(b)(1) A court record pertaining to a child is confidential and its contents may not be divulged, by subpoena or otherwise, *except by order of the court upon good cause shown* or as provided in § 7–303 of the Education Article.

(Emphasis added.) CJP § 3–8A–27(c) similarly provides that, even when the records have been "sealed," the records may be opened "by order of the court upon good cause shown." CJP § 3–8A–23(c) further provides: "Evidence given in a proceeding under this subtitle is not admissible against the child in any other proceeding in another court, except in a criminal proceeding where the child is charged with perjury and the evidence is relevant to that charge and is otherwise admissible."

Maryland Rule 11–121 implements the statute, stating, in pertinent part:

> a. **Sealing of Records.** Files and records of the court in juvenile proceedings, including the docket entries and indices, are confidential and shall not be open to inspection *except by order of the court or as otherwise expressly provided by law.* On termination of the court's juvenile jurisdiction, the files and records shall be sealed . . . .

> \* \* \*

> a. **Unsealing of Records.** Sealed files and records of the court in juvenile proceedings may be unsealed and inspected only by order of the court.

(Emphasis added.)

The statute provides in CJP § 3–8A–27(b)(1) that a juvenile record is confidential and that portions of it may not be disclosed "except by order of the court for good cause shown." The plain language of the statute anticipates that there will be circumstances in which there is good cause to disclose portions of the record. Rule 11–121 does not specifically mention "good cause," but clearly contemplates that the court may order disclosure under some circumstances, presumably when there is a good cause that outweighs the juvenile's interest in confidentiality. *Cf. Davis v. Alaska,* 415 U.S. 308, 320, 94

S.Ct. 1105, 39 L.Ed.2d 347 (1974) (a state's interest in avoiding disclosure of a juvenile offender's record "must fall before the right of [a defendant in a criminal proceeding] to seek out the truth in the process of defending himself"); *Zaal v. State,* 326 Md. 54, 77, 602 A.2d 1247 (1992) (noting that Maryland cases "reflect a . . . tendency to allow a defendant access to information when privacy interests are not overriding").

In the context of good cause for a postponement, this Court has stated: "The determination as to what constitutes good cause . . . is a discretionary one." *Marks v. State,* 84 Md.App. 269, 277, 578 A.2d 828 (1990), *cert. denied,* 321 Md. 502, 583 A.2d 275 (1991). In the present case, the trial court did not purport to exercise any discretion to determine whether there was any good cause for defense counsel to review the statement, but rather concluded that the court had no discretion to permit any review of the record by defense counsel.

When a trial court is expected to exercise judicial discretion in deciding a matter, its failure to exercise any discretion is error. As the Court of Appeals put it in *Gunning v. State,* 347 Md. 332, 351, 701 A.2d 374 (1997):

It is well settled that a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter. That exercise of discretion must be clear from the record. The court's failure to fulfill this function can amount to error, that ordinarily requires reversal.

(Citations and internal quotation marks omitted.) In the present case, the record reflects that the trial court failed to exercise its discretion because it concluded it had none. This was error.

We recognize that, as the State reminds us, "trial judges are not obliged to spell out in words every thought and step of logic," *Beales v. State,* 329 Md. 263, 273, 619 A.2d 105 (1993), and, "[a]bsent an indication to the contrary, trial courts are presumed to know the law and apply it correctly." *Jones v. State,* 138 Md.App. 12, 21, 769 A.2d 1015, *cert. denied,* 364 Md. 535, 774 A.2d 409 (2001). Here, however, there was "an

indication to the contrary": the trial court's express comments explaining its reasoning for denying access indicate that it did not believe it had any discretion to grant access under any circumstances.

The State asserts that the trial court properly ruled that the defendant was not entitled to the statement because the trial judge "undertook an *in camera* review of the document in question before making her ruling," and "[a]fter her review of the document, she ruled that the defendant was not entitled to it." There are two flaws in this argument. First, although the trial judge originally stated that it was her intention to undertake an *in camera* review of the document, her subsequent comments—"I'm not entitled to it, . . . none of us are entitled to it"—indicate that the court interpreted Rule 11–121 as precluding even the court's review. Second, even if the court did conduct some review *in camera,* the court's comments indicate that the review did not apply the correct legal standard and analyze whether there was good cause for disclosure.

 The State also argues that the record in this case is unclear with respect to the significance of the undisclosed document. Although that question could have been addressed by the trial court during its *in camera* review, it was not, through no fault or lack of diligence on the part of Samie. The general test for whether a confidential document should be disclosed was set forth by the Court of Appeals in *Cole v. State,* 378 Md. 42, 63, 835 A.2d 600 (2003) (quoting *Zaal, supra,* 326 Md. at 72, 602 A.2d 1247): " 'Disclosure is permitted when the need for it outweighs the privacy interest of [the party who has a privacy interest in the record].' " The Court further stated in *Cole, id.* at 63–64, 835 A.2d 6006 (quoting *Zaal, supra,* 326 Md. at 88, 602 A.2d 1247): "[W]hen a court conducts an *in camera* review without counsel present, '[t]he trial court's review should not only be aimed at discovering evidence directly admissible but also that which is usable for impeachment purposes, or that which would lead to such evidence.' "

A somewhat similar dispute regarding a criminal defendant's access to juvenile records was before the court in *United States v. Bates*, 617 F.2d 585 (10th Cir.1980). In that case, the trial court had denied the defendant's request for a transcript of the proceedings against a juvenile involving the same offense for which the defendant was on trial. The trial court based its denial of access on a statute making juvenile proceedings confidential. *Id.* at 586. The United States Court of Appeals for the Tenth Circuit concluded that the trial court erred, and that there should have been an *in camera* review of the transcript for "information that is of 'exculpatory or impeachment value' to the adult defendant" *Id.* at 587 (citation omitted). The appellate court noted that "[t]he conflict with the policy of confidentiality is especially minimal where, as here, the juvenile by his own testimony makes public many of the most damaging particulars of the transaction." *Id.*

Because Tyriq was not called as a witness for the State, this case is different from the situation that was presented in *Davis v. Alaska, supra,* 415 U.S. at 309, 94 S.Ct. 1105, where the specific issue before the Supreme Court was:

[W]hether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency.

Despite the different procedural posture of the *Davis* case, we consider instructive the Court's analysis of the conflict between a witness's right of privacy and the defendant's right to confront his accusers. In *Davis,* the key eyewitness for the prosecution in a burglary case was a youth who had himself been adjudicated a juvenile delinquent for burglary. The youth was on probation at the time he assisted the police in identifying the defendants. Defense counsel sought leave of court to cross-examine the juvenile by questioning him about his probationary status. The Court summarized defense coun-

sel's proffered reasoning as to the need to prove that the witness was on probation for a juvenile offense, *id.* at 311, 94 S.Ct. 1105:

> From this petitioner would seek to show—or at least argue—that [the juvenile] acted out of fear or concern of possible jeopardy to his probation. Not only might [the juvenile] have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the Polar Bar, but [the juvenile] might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation. [The juvenile]'s record would be revealed only as necessary to probe [the juvenile] for bias and prejudice and not generally to call [the juvenile]'s good character into question.

Because Alaska's rules of evidence and juvenile statutes prohibit the admission of evidence regarding juvenile proceedings, the trial court precluded the defendant from disclosing to the jury the fact that the witness had been on probation.

■ The Supreme Court reversed the conviction, holding that the defendant's right to cross-examine the witness outweighed the privacy interests of the juvenile offender. The Court held: "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320, 94 S.Ct. 1105. In reaching this conclusion, the Court emphasized the importance of the Sixth Amendment right of an accused to be confronted with the witnesses against him and the key role of cross-examination, *id.* at 316, 94 S.Ct. 1105:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and

memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.

The Maryland Court of Appeals similarly held that a witness's interest in confidentiality was outweighed by a criminal defendant's confrontation and due process rights in *Robinson v. State*, 354 Md. 287, 313, 730 A.2d 181 (1999). In *Robinson*, defense counsel learned during trial that two of the police officers who testified for the prosecution had given confidential statements to their Internal Affairs Division (IAD) concerning the robbery for which the defendant was on trial. *Id.* at 292, 730 A.2d 181.When defense counsel demanded that he be allowed to inspect the IAD statements, the trial court ordered the prosecutor to provide copies of the statements for the court to conduct its own *in camera* review "to determine whether there is anything exculpatory within" the statements. *Id.* at 293, 730 A.2d 181. Defense counsel's request to also be shown the statements *in camera* was denied. After reviewing the statements, the trial court concluded that there was no exculpatory information in the IAD statements, and sustained objections to cross-examination of the officers about any IAD investigation.

On appeal, *Robinson* "argue[d] that it was error for the trial court to refuse to permit him to review, in connection with cross-examination, the statements [the two officers] made to the IAD." *Id.* at 298, 730 A.2d 181. The Court of Appeals recognized that the IAD statements were confidential records, and that the Law Enforcement Officers' Bill of Rights "limits access to [only] the ... affected officer; and ... does not expressly provide access by anyone else." *Id.* at 308, 730 A.2d 181. Notwithstanding the statutory protection for the confidentiality of such records, however, the Court stated: "[W]hen due process concerns have been involved, the confidentiality of the records have been held to yield to those concerns." *Id.* (citing *Chief, Mont. Police v. Jacocks*, 50 Md.App. 132, 144, 436 A.2d 930 (1981)). The Court ruled: "The confidentiality interest must be balanced, in this context, against the confrontation and due process rights of the defendant." *Robinson*, 354 Md. at 309, 730 A.2d 181.

The *Robinson* Court rejected the State's argument that the defendant's right of discovery had been fully satisfied by the trial court's *in camera* review. Although the State argued that an *in camera* review by the court alone had been approved in a pretrial discovery setting in *Zaal, supra,* 326 Md. at 87, 602 A.2d 1247, the Court of Appeals considered the need for access by the defendant to be more pressing in Robinson's case. The Court noted that the discovery request in *Zaal* had been directed at "an entire file that was required to be kept by a state agency," *Robinson,* 354 Md. at 312, 730 A.2d 181, whereas Robinson sought to review specific written statements in the possession of the prosecutor for the purpose of determining their consistency with the trial testimony. There was, therefore, "a 'particularized need' for disclosure of the statement[s]" in Robinson's case. *Id.* The Court also noted that, in contrast to *Zaal,* "the officers' IAD statements pertain to the very same subject and [are] about the same incident as the witnesses' trial testimony." *Id.* at 312–13, 730 A.2d 181.

The *Robinson* Court, *id.* at 303, 730 A.2d 181, also quoted with approval this Court's discussion in *Leonard v. State,* 46 Md.App. 631, 638–39, 421 A.2d 85 (1980), *aff'd,* 290 Md. 295, 429 A.2d 538 (1981), regarding the importance of permitting trial counsel to examine the prior statement of a witness:

"These more subtle aspects of potential inconsistency, intrinsically subjective, have to be viewed from the defendant's perspective, and can be properly weighed only by defense counsel (with the assistance of his client). A screening of the statement by the court cannot suffice as an effective substitute. The court cannot be expected to view in the same context as defense counsel these more latent and subtle gaps or differences; nor should it purport to do so. It is for that reason as well that the court erred. If any weight is to be given to the aforequoted considerations, as we think the Court of Appeals intended, it is incumbent upon the court, under the circumstances evident here, to permit counsel to inspect the statement and determine for himself whether it is or is not usable for cross-examination.

The court still retains, of course, the ultimate right to determine whether the statement, or any part of it, is admissible in evidence, either as a document or through questions propounded to the witness. The issue here is not admissibility but inspection for possible use in cross-examination."

Although Samie's case differs from *Robinson* because the witnesses whose confidential statements were sought in that case had testified during the State's case, that distinction is minimized by Tyriq's key involvement in the incident for which Samie was being prosecuted. Not only was Tyriq directly involved in the altercation, he was the son of the State's two key witnesses against Samie. As in *Robinson*, defense counsel was not engaged in a mere fishing expedition; the State admitted that there was an agreed statement of facts that had been adopted by Tyriq in a prior court proceeding involving the same occurrence for which Samie was being prosecuted. If Samie had been permitted to utilize the prior statement in connection with his examination of Tyriq—who was clearly a hostile witness and subject to impeachment, *see* Maryland Rules 5–611(c)(2) and 5–607—the jury's view of the evidence may have been swayed.

◼ In the present case, Tyriq's involvement as an eyewitness to, participant in, and purported victim of, the physical altercation with Samie was necessarily made public by the testimony of several other witnesses during this trial, thereby diminishing Tyriq's interest in the confidentiality of his juvenile proceedings. Under such circumstances, we conclude that the trial court erred in failing to consider whether Samie's counsel could have gleaned any information from the statement that would have been of assistance in the cross-examination or impeachment of Tyriq. As the Court of Appeals noted in *Cole, supra,* 378 Md. at 65, 835 A.2d 600: "Because the State's burden to prove its case 'beyond a reasonable doubt' is such a demanding standard, even a small piece of evidence may make a difference to a fact-finder in its analysis."

Because we have concluded that the trial court erred in its refusal to permit inspection of the statement of facts to which Tyriq agreed in his juvenile proceeding, appellant's conviction cannot stand; an error is not harmless "unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). Tyriq's testimony was supportive of the jury's verdict, and we cannot conclude beyond a reasonable doubt that defense counsel's use of a statement of facts Tyriq previously agreed to would not have altered the jury's verdict. Accordingly, the error was not harmless, and we must vacate the judgment and remand for further proceedings.

### Other issues

Samie presents two additional evidentiary questions in his brief. Neither is properly preserved for our review. First, Samie contends that the trial court erred in not permitting his counsel to examine a defense witness about his communications with the State's Attorney's office. Samie contends that, if the witness had been permitted to answer the questions, the answers would have demonstrated that the witness made a prompt, consistent report to the prosecutor's office. Samie concedes that the record contains no proffer of what the witness would have said if permitted to answer. In the absence of such a proffer, there is nothing for us to review. Similarly, the second question challenges the court's refusal to admit certain medical records of the defendant. Samie's counsel argued at trial that the records were relevant because they would prove "[t]hat he can't see without his glasses." Neither the appellant's brief nor the transcript contains any further proffer or explanation of anything in the exhibit that could have assisted the jury in making any finding about Samie's eyesight. As a consequence, we are unable to determine that the trial court erred in excluding the evidence.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.